The PEOPLE of the State of Colorado, Plaintiff–Appellee,

v.

Corinthian PRENTISS, Defendant–Appellant.

No. 03CA1364.

Colorado Court of Appeals, Div. I.

Dec. 14, 2006.

As Modified on Denial of Rehearing April 26, 2007.

John W. Suthers, Attorney General, Katharine J. Gillespie, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Priscilla J. Gartner, Deputy State Public Defender, Jud Lohnes, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge ROTHENBERG.

In summary, we conclude the trial court erred in ruling as a Opinion is Modified to read:

In his Petition for Rehearing, defendant contends we have erred "by requiring the defense to make an offer of proof even with respect to *relevant* evidence under § 18–3–407(1)(b)." According to him, the opinion is incorrect because it "effectively holds that the Rape Shield's procedural requirements for presumptively irrelevant evidence apply even to relevant evidence." We disagree.

Defendant's argument, if accepted, would mean that whenever an accused in a sexual assault case proffers evidence that falls outside the three statutory exceptions in the Rape Shield statute, that evidence is *presumed to be admissible,* and that in such case, there is no requirement that the court determine whether the evidence is relevant to the particular case involved, whether its probative value outweighs any unfair prejudice, or whether the defense is engaging in a "fishing expedition" based upon speculation. We conclude defendant reads the Rape Shield statute too narrowly.

In *McKenna, supra,* 196 Colo. at 371–72, 585 P.2d at 277–78, the supreme court discussed the public policy underlying the statute:

> Prior to the enactment of this statute, defense counsel in a rape case was accorded wide latitude in cross-examining the prosecutrix. Since her credibility was placed in issue when she testified, her prior sexual conduct was considered admissible to undermine her credibility. Moreover, where consent was a defense, as it frequently was, it was thought that the fact that she had consented to sexual relations with others on other occasions might justify a factfinder in concluding that she prob-

ably had consented to the sexual act giving rise to the prosecution. Little or no analysis was applied to attempting to discern whether her sexual habits actually had any logical connection with her credibility or whether her prior consent to intercourse with another at a different time had any logical bearing on whether she had consented to sexual relations with the particular man on trial at the time charged.

[I]t has become apparent that in many instances a rape victim's past sexual conduct may have no bearing at all on either her credibility or the issue of consent. In fact in many cases, cross-examination probing her sexual history has served only to put her on trial instead of the defendant. The basic purpose of section 18–3–407, therefore, is one of Public policy: to provide rape and sexual assault victims greater protection from humiliating and embarrassing public "fishing expeditions" into their past sexual conduct, without a preliminary showing that evidence thus elicited will be relevant to some issue in the pending case. The statute represents one means chosen by the general assembly to overcome the reluctance of victims of sex crimes to report them for prosecution. Thus it reflects a major public policy decision by the general assembly regarding sexual assault cases. In effect the legislature has declared the state's policy to be that victims of sexual assaults should not be subjected to psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders. (Internal citations omitted)

The court then addressed and rejected the defendant's contention that the statute denied him the constitutional right to confront his accuser, stating:

[The Rape Shield statute] does not deny a defendant the right to confront the victim and reveal the evidence, if in fact it is shown that such evidence is relevant. The statute provides specific means by which a defendant may make a formal offer of proof, and a full In camera hearing may be held prior to trial to determine the relevance, if any, of the evidence. If the court finds that the victim's sexual history is

relevant and material in the particular case, then the defendant may introduce the evidence at trial. On the other hand, if the court determines In camera that the proffered evidence is irrelevant, the prosecutrix is spared the ordeal of public cross-examination regarding that subject.

[T]he statute strikes a balance by conditioning admission of evidence of the victim's sexual history on the defendant's preliminary showing that it is relevant. It involves no denial of the defendant's right to confront his accuser for there is no constitutional right to introduce irrelevant and highly inflammatory evidence. (Internal citations omitted)

*McKenna, supra,* 196 Colo. at 373–74, 585 P.2d at 279 (internal citations omitted).

In *People v. Harris,* 43 P.3d 221, 225–26 (Colo.2002), the supreme court again addressed the Rape Shield statute and the import of its three statutory exceptions:

The rape shield statute's general prohibition on the admission of evidence of a rape victim's sexual conduct is qualified by three statutory exceptions. Thus, the evidence is not presumptively irrelevant under the statute if: (1) it is evidence of a victim's prior sexual contact with the accused; (2) it is evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or similar evidence; or (3) if the defendant makes an offer of proof showing that the evidence is relevant to a material issue in the case. *Evidence coming within one of these provisions is not automatically admissible, however: it remains subject to the usual rules of evidence. Specifically, a trial court must apply CRE 403 to balance the probative value of the proffered evidence against any possible unfair prejudice.*

Section 18–3–407 strikes a balance between the defendant's rights and the victim's privacy interest by conditioning admission of evidence of the victim's sexual history on the defendant's preliminary showing that such evidence is relevant and material to the case.... *Unless the defendant demonstrates that the proffered evidence meets a statutory exception under*

section 407(1) and makes a sufficient showing of relevancy in the defendant's offer of proof under 407(2), the trial court will deny the motion. (Emphasis added; internal citations omitted)

Contrary to defendant's contention, evidence of a victim's prior sexual activity that falls outside the three statutory exception of the Rape Shield statute is not presumed to be relevant. It is simply not presumed to be irrelevant. And the existence of such evidence does not obviate the requirement that the defendant make a sufficient showing of relevancy in his offer of proof. *Harris, supra; McKenna, supra.*

In summary, we conclude the trial court erred in ruling as a

Defendant, Corinthian Prentiss, appeals the judgment entered on his conviction for sexual assault on a child, sexual assault on a child-position of trust, and aggravated incest. He also challenges the authority of the court to impose the sentence upon him. We affirm.

Defendant's charges arose from allegations that he had engaged in anal sex, vaginal sex, oral sex, digital penetration, and fondling with his stepdaughter (the victim) while she was visiting him in Colorado. The victim was thirteen years old at the time of the sexual abuse and had an IQ of 49, placing her on the borderline between "mild" and "moderate" mental retardation. She developed a father-daughter relationship with defendant during his marriage to her mother when all three resided together in Iowa. Even after defendant had separated from the victim's mother, the victim remained in touch with him and visited him and his girlfriend at his residence in Colorado.

During the victim's visit, defendant's girlfriend left Colorado to visit her family in Iowa. After she returned to Colorado, she decided to leave defendant and to drive back to Iowa with the victim. While they were in the car, the girlfriend asked the victim whether "there was anything [defendant] told [the victim] not to tell her." The victim stated that defendant had "butt-fucked" her.

The victim was examined by a medical expert who discovered a small healed tear in her hymen, consistent with vaginal penetration by a blunt object such as a penis. The expert testified at trial that the tear likely occurred during the "primary event," or "first time of penetration." The expert found no evidence of anal trauma.

The victim was also interviewed before trial by the Sungate Children's Advocacy Center, and she reported that similar abuse had taken place while defendant lived with her and her mother in Iowa. According to the victim, defendant had put his penis in her "poop part" and not her "pee part." The Sungate interview was videotaped and shown to the jury. The victim also testified at trial that defendant had engaged in anal and oral sex with her on several occasions while she was visiting him in Colorado.

Following the evidence, the jury convicted defendant of the above-stated charges and make a specific and unanimous finding that he committed the acts of oral and vaginal penetration.

## I.

Defendant contends the trial court erred in concluding the Colorado rape shield statute, § 18-3-407, C.R.S.2006, prevented him from cross-examining the victim about whether she was sexually active with anyone other than him. He contends such evidence was admissible to rebut the People's contention that the injury to the victim's hymen was evidence of his guilt. The People maintain that defendant lacked a good faith basis for such questioning and failed to make a sufficient offer of proof to permit cross-examination of the victim regarding prior sexual activity and, therefore, that the trial court did not err in precluding him from inquiring further of the victim.

We conclude the rape shield law does not bar such evidence and the trial court erred in ruling otherwise. Nevertheless, we agree with the People that defendant failed to lay a sufficient foundation for asking the victim about her prior sexual activity, and therefore we perceive no abuse of discretion by the trial court.

■ Evidentiary rulings by the trial court will not be overturned on appeal unless the rulings were manifestly arbitrary, unreasonable, or unfair. *People v. Melillo*, 25 P.3d 769, 773 (Colo.2001).

■ Colorado's rape shield statute prescribes a pretrial screening procedure to review proposed evidence as to the victim's prior sexual conduct before the evidence may be presented publicly at trial. Section 18–3–407; *People v. McKenna*, 196 Colo. 367, 585 P.2d 275 (1978). The purpose of the rape shield statute is to protect victims of sexual assault from humiliating and embarrassing public "fishing expeditions" into their sexual conduct; to overcome victims' reluctance to report incidents of sexual assault; and to protect victims from "psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders." *McKenna, supra,* 196 Colo. at 372, 585 P.2d at 278.

Under the statute, evidence of "specific instances of the victim's … prior or subsequent sexual conduct, opinion evidence of the victim's … sexual conduct, and reputation evidence of the victim's … sexual conduct" are presumed to be irrelevant. Section 18–3–407(1), C.R.S.2006; *McKenna, supra.* However, there is an exception for "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not committed by the defendant." Section 18–3–407(1)(b), C.R.S.2006.

### A.

At trial, the prosecution presented evidence that defendant had anally and vaginally penetrated the victim, and she testified that she had been sexually abused by him. Although the victim was found competent to testify, her testimony was unclear as to whether there was anal penetration, vaginal penetration, or both:

Prosecutor: When his penis part was touching your butt, what was he doing with it?

Victim: Shoving it in.

. . . .

Defense counsel: You said [defendant] put his penis in your butt; is that correct?

Victim: Yes.

Defense counsel: Was that your poop part or your pee part?

Victim: I don't remember.

The medical expert who examined the victim established that she had difficulty distinguishing between her "pee part" and her "butt part." As part of the examination, the expert asked her to tell him specifically where defendant had touched her. The expert explained that she was "able to get very specific to the labia." He testified:

Then I touch the pubic hair area on the bottom front of the abdomen. [The victim] did not say he touched there. I got all the way down between these two spots on either side of the vagina. She said, yes, that is where he touched . . . .

In the first part of the interview, [the victim stated that defendant] used his pee part to put in her butt and not her pee part. I had to further define that in my report. [The victim] included the vagina as part of the butt part . . . .

[During the interview the victim further stated] [h]e put his pee part into her butt. Her words were, it was between here and there so I knew she was talking about the vagina opening. [The victim] also said that he made her suck his penis and occasionally he kissed her breasts.

The medical expert testified that the victim's physical condition was consistent with penetrating vaginal trauma, and that his physical examination revealed "a tear to her hymen about three-fourths of an inch or an inch inside the vaginal opening" consistent with blunt trauma to the victim's hymen. According to the expert, the hymen injury was "well healed," was likely more than three weeks old, and "could be" consistent with the victim's allegation of vaginal penetration by defendant. The expert stated that there was "no history of any type of vaginal penetration of which [the victim] was aware of at the time of the examination" and no evidence the tear to her hymen was caused by her use of a tampon.

Defendant cross-examined the prosecution's witnesses in an attempt to show (1) the victim made prior inconsistent statements as to whether she was penetrated anally, vaginally, or both, and (2) the injury to her hymen may have been caused by some other source. During defense counsel's cross-examination of the victim, she denied that she had ever put anything inside the part she called her "pee-part" or that she had ever hurt it.

### B.

In *People v. Martinez*, 634 P.2d 26 (Colo. 1981), the defendant denied having sexual intercourse with the alleged victim and sought to cross-examine her as to whether she had consensual sexual intercourse with someone other than him within the twenty-four-hour period before the alleged sexual assault. The trial court precluded the cross-examination under the rape shield statute.

The supreme court agreed with the defendant that this testimony should have been admitted "because it explained the presence of the live sperm in the [victim's] vaginal tract and supports [the defendant's] contention that he never had sexual intercourse with her." *Martinez, supra,* 634 P.2d at 30–31. The court observed that "[t]he Colorado 'rape shield' statute specifically excepts this type of evidence from its substantive and procedural provisions." *Martinez, supra,* 634 P.2d at 31. However, the court added that such evidence was subject to the usual rules of evidence. *Martinez, supra,* 634 P.2d at 31.

Other jurisdictions have applied the same principle to cases in which evidence of a victim's hymenal injury is admitted by the prosecution to show the defendant's guilt. For example, in *State v. Brown*, 29 S.W.3d 427 (Tenn.2000), the Tennessee Supreme Court held admissible evidence that the eleven-year-old complainant told two friends she had sexual intercourse with an adolescent male during the same time the alleged sexual assault by the defendant had occurred. The court concluded such evidence was not precluded by the rape shield statute and should be admitted to rebut the inference, urged by the prosecution, that the defendant was re-

sponsible for the injury to the complainant's hymen. *Accord People v. Mikula,* 84 Mich. App. 108, 269 N.W.2d 195, 198 (1978) (Michigan's rape shield statute does not prohibit evidence of the complainant's sexual conduct with a person other than the defendant to explain the condition of the victim's hymen and vaginal opening); *see Tague v. Richards,* 3 F.3d 1133 (7th Cir.1993); *State v. Reinart,* 440 N.W.2d 503 (N.D.1989).

■ We agree with the rationale of these cases and conclude they are consistent with *Martinez, supra.* We reaffirm the principle that as a general matter, a victim's virginity, or lack thereof, has no relevance in a sexual assault prosecution. However, where, as here, the prosecution introduces hymenal evidence and urges the jury to infer from it that an unlawful sexual act occurred, the victim's physical condition becomes an issue. In the absence of any testimony of prior sexual experience, the jury would likely presume that the hymenal damage to a thirteen-year-old girl was the result of the sexual assault committed upon the young victim by the defendant.

Nevertheless, the supreme court clarified in *Martinez, supra,* 634 P.2d at 31, that this exception to the rape shield statute is subject to the usual rules of evidence. These rules include the requirement that the defendant lay a foundation before cross-examining a victim about his or her prior sexual activity. This foundational requirement protects victims of sexual assault from humiliating "fishing expeditions" into their sexual conduct. *McKenna, supra,* 196 Colo. at 371, 585 P.2d at 278.

■ Accordingly, we conclude that if a proper foundation is laid—presumably before trial, but at least outside the presence of the jury—the defendant should be given a reasonable opportunity to inquire whether a young victim was sexually active with other persons in a manner that could have caused her hymenal injury. We further conclude such evidence does not violate the rape shield statute, and the trial court here erred in ruling otherwise. *Cf. Martinez, supra.*

However, reversal is not required in this case. The trial court found that defendant waited to raise this issue until the first day of trial, and he did not make a sufficient offer of proof that the victim's hymenal injury was caused by any prior sexual activity. Although she admitted during the videotaped Sungate interview that she had "boyfriends," she never admitted or even suggested she had engaged in any sexual activity with them, much less vaginal intercourse. She was specifically asked during the Sungate interview whether anybody else had ever touched her in the same way that defendant did, and she said no. And, during her physical examination, she told the medical expert she was not aware that any other kind of prior vaginal penetration had occurred.

Thus, there was no evidence suggesting the victim had engaged in prior sexual activity with anyone. Contrary to defendant's contention, the fact that she was physically well developed and had been in special education classes with potential juvenile offenders did not provide a sufficient basis for inferring she was sexually active and had had intercourse. We note that in virtually all the cases relied upon by defendant involving young victims with hymenal injuries, the defense filed a pretrial motion and made an offer of proof demonstrating a basis for questioning the victim about her prior sexual activity. *See Tague v. Richards, supra,* 3 F.3d at 1136–37 (victim told examining physician she had previously been molested by her father); *People v. Mikula, supra,* 84 Mich. App. at 111, 269 N.W.2d at 197 (defendant filed pretrial motion asserting that police report contained an allegation complainant had been involved in a "sexual incident with a 14-year old boy" before the offense involving the defendant); *State v. Brown, supra,* 29 S.W.3d at 428 (defendant made offer of proof in pretrial motion that victim admitted to friends she had been having sex with a boyfriend). *But see State v. Reinart, supra,* 440 N.W.2d at 507 n. 4 (offer of proof not required).

In his petition for rehearing, defendant contends we have erred "by requiring the defense to make an offer of proof even with respect to *relevant* evidence under § 18–3–

407(1)(b)." According to him, the opinion is incorrect because it "effectively holds that the rape shield's procedural requirements for presumptively irrelevant evidence apply even to relevant evidence." We disagree.

Defendant's argument, if accepted, would mean that whenever an accused in a sexual assault case proffers evidence that falls within the three statutory exceptions in the rape shield statute, that evidence is *presumed to be admissible,* and that in such case, there is no requirement that the court determine whether the evidence is relevant to the particular case involved, whether its probative value outweighs any unfair prejudice, or whether the defense is engaging in a "fishing expedition" based upon speculation. We conclude defendant reads the rape shield statute too narrowly.

In *McKenna, supra,* the supreme court discussed the public policy underlying the statute:

Prior to the enactment of this statute, defense counsel in a rape case was accorded wide latitude in cross-examining the prosecutrix. Since her credibility was placed in issue when she testified, her prior sexual conduct was considered admissible to undermine her credibility. Moreover, where consent was a defense, as it frequently was, it was thought that the fact that she had consented to sexual relations with others on other occasions might justify a factfinder in concluding that she probably had consented to the sexual act giving rise to the prosecution. Little or no analysis was applied to attempting to discern whether her sexual habits actually had any logical connection with her credibility or whether her prior consent to intercourse with another at a different time had any logical bearing on whether she had consented to sexual relations with the particular man on trial at the time charged.

... [I]t has become apparent that in many instances a rape victim's past sexual conduct may have no bearing at all on either her credibility or the issue of consent. In fact in many cases, cross-examination probing her sexual history has served only to put her on trial instead of the defendant.

The basic purpose of section 18–3–407, therefore, is one of [p]ublic policy: to provide rape and sexual assault victims greater protection from humiliating and embarrassing public "fishing expeditions" into their past sexual conduct, without a preliminary showing that evidence thus elicited will be relevant to some issue in the pending case. The statute represents one means chosen by the general assembly to overcome the reluctance of victims of sex crimes to report them for prosecution. Thus it reflects a major public policy decision by the general assembly regarding sexual assault cases. In effect the legislature has declared the state's policy to be that victims of sexual assaults should not be subjected to psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders.

*McKenna, supra*, 196 Colo. at 371–72, 585 P.2d at 277–78 (citations omitted).

The court then addressed and rejected the defendant's contention that the statute denied him the constitutional right to confront his accuser, stating:

[The rape shield statute] does not deny a defendant the right to confront the victim and reveal the evidence, if in fact it is shown that such evidence is relevant. The statute provides specific means by which a defendant may make a formal offer of proof, and a full [i]n camera hearing may be held prior to trial to determine the relevance, if any, of the evidence. If the court finds that the victim's sexual history is relevant and material in the particular case, then the defendant may introduce the evidence at trial. On the other hand, if the court determines [i]n camera that the proffered evidence is irrelevant, the prosecutrix is spared the ordeal of public cross-examination regarding that subject.

... [T]he statute strikes a balance by conditioning admission of evidence of the victim's sexual history on the defendant's preliminary showing that it is relevant. It involves no denial of the defendant's right to confront his accuser for there is no constitutional right to introduce irrelevant and highly inflammatory evidence.

*McKenna, supra*, 196 Colo. at 373–74, 585 P.2d at 279 (citations omitted).

In *People v. Harris*, 43 P.3d 221 (Colo. 2002), the supreme court again addressed the rape shield statute and the import of its three statutory exceptions:

The rape shield statute's general prohibition on the admission of evidence of a rape victim's sexual conduct is qualified by three statutory exceptions. Thus, the evidence is not presumptively irrelevant under the statute if: (1) it is evidence of a victim's prior sexual contact with the accused; (2) it is evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or similar evidence; or (3) ... the defendant makes an offer of proof showing that the evidence is relevant to a material issue in the case. *Evidence coming within one of these provisions is not automatically admissible, however: it remains subject to the usual rules of evidence. Specifically, a trial court must apply CRE 403 to balance the probative value of the proffered evidence against any possible unfair prejudice.*

Section 18–3–407 strikes a balance between the defendant's rights and the victim's privacy interest by conditioning admission of evidence of the victim's sexual history on the defendant's preliminary showing that such evidence is relevant and material to the case.... *Unless the defendant demonstrates that the proffered evidence meets a statutory exception under section 407(1) and makes a sufficient showing of relevancy in the defendant's offer of proof under 407(2), the trial court will deny the motion.*

*People v. Harris, supra*, 43 P.3d at 225–26 (emphasis added; citations omitted).

■ Contrary to defendant's contention, evidence of a victim's prior sexual activity that falls within the three statutory exceptions of the rape shield statute is not presumed to be relevant. It is simply not presumed to be irrelevant. And the existence of such evidence does not obviate the requirement that the defendant make a sufficient showing of relevancy in his offer of proof. *Harris, supra; McKenna, supra.*

In summary, we conclude the trial court erred in ruling as a matter of law that the rape shield statute precluded cross-examination of the victim regarding prior sexual activity that could have caused the hymen injury. It does not. But defendant was still required to establish an adequate foundation to permit him to cross-examine the victim regarding such activity. The foundation need not be extensive, but here none was shown.

Accordingly, the trial court did not abuse its discretion in finding that defendant failed to lay an adequate foundation showing there was another explanation for the victim's hymenal injury, other than defendant's sexual assault, and in precluding him from questioning the victim about her prior sexual activity.

■ We further observe that any error by the trial court regarding the rape shield ruling would only affect the jury's finding that defendant was guilty of vaginal penetration. It would have no impact on the jury's finding that he was guilty of oral penetration.

At trial, the victim testified that defendant caused her to suffer oral penetration. She was asked the following questions:

Prosecutor: When we were talking a second ago about you touching a part of [defendant's] body and you said you touched his part down there, can you point on this exhibit or this picture what you mean? Is down there the same thing as his penis part?

Victim: Yes.

Prosecutor: Can you tell us please how it was that you touched his penis part? What part of your body touched his penis part?

Victim: Right here (indicating).

Prosecutor: Did he want you to do something with your hand?

Victim: Yes.

Prosecutor: What did he want you do to with your hands?

Victim: Hold it.

Prosecutor: Did he want you to just hold it or do anything else?

Victim: He wanted me to do something else.

Prosecutor: What is the something else that he wanted you to do?

Victim: Suck it.

Prosecutor: Did you suck his penis part?

Victim: Yes.

The victim's testimony regarding defendant's oral penetration was supported by her description of the physical appearance of his penis, and by the testimony of other witnesses, who confirmed that the victim had made similar statements regarding defendant's oral penetration of her. Her mother testified at trial to a conversation with the victim in which the victim stated defendant had forced her to perform oral sex. The mother was asked the following question:

Prosecutor: Oral sex. What did [the victim] say about that?

Mother: That dad makes me kiss it, he makes me suck on it. I asked her, What's "it"? You know. And she says, dick, not knowing the word for it, you know, penis or whatever. So—are you sure you know, that kind of thing. I had a hard time. I didn't want to believe it, you know.

The medical expert also testified that during the physical exam, the victim said that defendant "made her suck his penis and occasionally he kissed her breasts." The victim made a similar statement during the Sungate interview.

Thus, even assuming the trial court erred in its rape shield ruling, we conclude any error was harmless beyond a reasonable doubt because it only affected the issue of whether defendant vaginally penetrated the victim. It did not affect the jury's unanimous finding that defendant also orally penetrated her.

■ We have also considered defendant's related argument that the prosecutor committed misconduct when she argued that defendant must have caused the victim's hymenal injury because he presented no evidence that the victim "was sexually active with anybody else."

Because defendant made no contemporaneous objection to the statements he now complains are prejudicial, we review for plain error, *see* Crim. P. 52(b), and we conclude the prosecutor's statements, viewed in context, do not constitute plain error.

## II.

■ Defendant also contends his conviction and sentence must be vacated because a county court judge received the verdict and imposed the sentence. Defendant maintains that this judge lacked the authority to do so, and therefore, the verdict and sentence are void. We disagree.

A county court judge who has been licensed to practice law in Colorado for five years may be assigned by the Chief Justice of the Colorado Supreme Court to perform judicial duties in any district. Section 13-6-218, C.R.S.2006. The Chief Justice is also empowered to delegate his or her administrative powers to the chief judges of the judicial districts. Colo. Const. art. VI, § 5(4); *see* Chief Justice Directive 95-01 (providing that a chief judge may assign county court judges to district court when necessary); *People v. Torkelson,* 22 P.3d 560 (Colo.App. 2000)(where the county court judge had not been appointed properly pursuant to constitution, statute, or chief justice directive, he was acting without authority at the time he accepted the verdict).

Here, the record contains evidence that on January 10, 2003, County Court Judge Ethan Feldman was appointed to act as a district court judge pursuant to Chief Justice Directive 95-01. Therefore, he had authority to receive the jury verdict and to impose the sentence on defendant.

The judgment and sentence are affirmed.

Judge MÁRQUEZ and Judge BERNARD concur.