23CA0396 Peo v Sparkman 03-12-2026

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0396
Mesa County District Court No. 21CR281
Honorable Matthew D. Barrett, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Boyd Newton Sparkman,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE DUNN
Harris and Moultrie, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced March 12, 2026

---

Philip J. Weiser, Attorney General, William G. Kozeliski, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Kamela Maktabi, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Boyd Newton Sparkman appeals his convictions for six counts of sexual assault on a child (pattern), four counts of sexual assault on a child (position of trust), three counts of aggravated incest, and one count each of bribing a witness, retaliation against a witness, and child abuse.

¶ 2     Sparkman contends that the district court erred by (1) excluding evidence under Colorado's rape shield statute, section 18-3-407, C.R.S. 2022;[1] (2) excluding evidence about marijuana use; and (3) admitting improper expert testimony.  Sparkman also contends that the cumulative effect of these errors requires reversal.  And, finally, he challenges the constitutionality of his indeterminate prison sentence.  We affirm.

I.     Background

¶ 3     Before one Valentine's Day, Sparkman drove his thirteen-year-old stepdaughter, A.S., and her friend, S.M., to a store to get some treats.  While parked, Sparkman reached into the back seat and

---

[1] Although the rape shield statute was amended after Sparkman's trial, *see* § 18-3-407, C.R.S. 2025; Ch. 123, sec. 2, § 18-3-407, 2024 Colo. Sess. Laws 408-10, we apply the version of the statute in effect at the time of trial, *People v. Ramcharan*, 2024 COA 110, ¶ 2.

touched S.M.'s vagina over her clothes.  S.M. pushed Sparkman's hand away.  A.S. saw what happened.  Later that day, A.S. admitted to S.M. that Sparkman had done similar things to her.

¶ 4     Later that weekend, Sparkman "rubb[ed]" S.M.'s hips and "slapped [S.M.'s] butt."  S.M. told a friend that Sparkman had touched her.  S.M.'s outcry soon reached S.M.'s mother, who then called T.R. (A.S.'s mother and Sparkman's wife).

¶ 5     When they were alone, T.R. asked A.S. about the allegations.  A.S. eventually told her mom that Sparkman had touched S.M. in the car and that Sparkman had been sexually assaulting A.S. for years.  A.S. also told her mom that Sparkman had condoms in his fishing bag.

¶ 6     After A.S.'s disclosure, T.R. confronted Sparkman and went to check his fishing bag.  Before she could get to the bag, Sparkman admitted that A.S. was not lying and fled.  Soon after, T.R. and Sparkman exchanged text messages, which said, in relevant part:

> [T.R.:] . . . [W]hy would u hurt her like
> that . . . .
>
> [Sparkman:] I'm sorry I did anything to hurt
> you and the family I know I'm a worthless
> piece of shit . . . .

> [T.R.:] . . . I just dont understand why u would fuck our daughter u even bought condoms . . . .
>
> [Sparkman:] . . . I am sorry there's nothing I can do to change myself . . . I don't belong in this world anymore and I don't know what I'm doing I don't know why I did it I just wish I never done it.

¶ 7    Over the course of several more text messages, Sparkman added, among other things:

- "Well I'm at the end right now tell my babies I love them I will always love them and I won't be able to see me in heaven because I'll be in hell for all the fuckedupshit I've ever done";

- "I can't live with anything I've done I wish none of this was ever existing";

- "You have to understand she had me trapped no matter what I did I was still going to be in trouble there was nothing I could do to stop it";

- "I didn't want to tell you cuz I didn't want you to hate your daughter";

- "This is something that can never be fixed I can't live with myself";

3

- "Just so you know she was never scared . . . she was more willing than anything I never had to force myself on her because I didn't have to she thought that's what our relationship was supposed to be because she didn't know anything else to do and I didn't want to turn away because I didn't want her to hate me but now all I see is all I could do";

- "I didn't mean to fuck up everybody's life"; and

- "I'm sorry."

¶ 8    The prosecution charged Sparkman with multiple counts of sexual assault on a child and multiple counts of aggravated incest as to A.S.; two counts of sexual assault on a child as to S.M.; bribing a witness and retaliation against a witness as to T.R.; and one count of child abuse for striking A.S.'s brother.

¶ 9    At trial, though Sparkman didn't testify, defense counsel argued that the sexual assault allegations began as a prank but "spun out of control, and became a way to get rid of [A.S.'s] stepfather."[2]

---

[2] Defense counsel admitted the child abuse charge and didn't address the retaliation and bribery charges.

¶ 10    The jury found Sparkman guilty.  The district court sentenced Sparkman to a controlling indeterminate prison sentence of 136 years to life plus a determinate eighteen-year prison sentence.

## II.    Rape Shield Statute

¶ 11    Sparkman contends that the district court abused its discretion by denying his motion to admit evidence about an investigation into possible sexual abuse by A.S.'s biological father and, as a result, violated his constitutional rights to confrontation and to present a defense to A.S.'s allegations.[3]  We aren't persuaded.

### A.    Additional Background

¶ 12    Before trial, Sparkman filed a notice seeking to admit evidence under the rape shield statute that "A.S. was a victim of a sexual assault investigation of her biological father . . . which was ultimately not prosecuted."  Sparkman asserted that regardless of whether the abuse allegation was "true or false," the evidence was relevant:

---

[3] Sparkman does not contend that this argument impacts his convictions that do not involve A.S.

- to explain A.S.'s familiarity with the investigative process, particularly a forensic interview;

- to explain A.S.'s statements to the forensic interviewer in this case that she knew her allegation against her biological father was not previously believed and to impeach her credibility with respect to her allegations against Sparkman;

- to explain a possible alternative source of historical injury found by the sexual assault nurse examiner (SANE); and

- as a specific act of dishonesty.

¶ 13    The district court denied Sparkman's motion without a hearing.

¶ 14    At trial, the prosecution called the SANE, who testified about injuries to A.S.'s hymen that were "consistent with blunt force trauma."  The SANE also testified that she could not say when the injuries occurred.

¶ 15    After that trial ended in a mistrial, the district court sua sponte revisited its rape shield ruling.  Based on the SANE's testimony that the hymenal injuries could not be dated, the court granted Sparkman a hearing to consider whether the defense could

show that the alleged sexual assault by A.S.'s biological father "could have caused this injury to the hymen."

¶ 16 At the hearing, defense counsel argued that the 2013 forensic interviews and police reports were sufficient to show that the injury could have been caused by A.S.'s biological father. After considering those materials, the court found that "at absolute best, there is simply - - a lot of conflicting information - - as it relates to whether there was any inappropriate touching at all" and "at most, if there was inappropriate touching, it - - falls far short of establishing by a preponderance of the evidence that - - such inappropriate touching . . . could have caused the injury that - - is at issue for trial." The court therefore denied the motion, finding that the defense had not met its burden to show that the injury suffered "was a result of anything other than what" was alleged in this case.

¶ 17 At the retrial, the SANE again testified that A.S. had "two well healed hymenal transections which are consistent with blunt force trauma . . . consistent with her report of the events associated with her assaults." The SANE admitted that she couldn't say when the hymenal injuries occurred.

## B.     Legal Principles and Standard of Review

¶ 18     Under the rape shield statute, most evidence of specific instances of a victim's prior sexual conduct — which includes prior sexual victimization — is presumptively irrelevant.  *See* § 18-3-407(1); *People v. Weiss*, 133 P.3d 1180, 1185 (Colo. 2006). Generally, such evidence is admissible at trial only after a pretrial procedure that requires a written motion, an affidavit, an offer of proof as to the relevancy and materiality of the evidence, and an in camera hearing on disputed facts.  *See* § 18-3-407(2).

¶ 19     But there are exceptions to the rape shield statute, one of which is for "[e]vidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not committed by the defendant."  § 18-3-407(1)(b).  Such evidence is neither presumptively irrelevant nor subject to the procedural safeguards of the rape shield statute.  *See Pierson v. People*, 2012 CO 47, ¶¶ 10-14.  It is, however, still subject to the "required balancing of probativeness and countervailing considerations enumerated in CRE 403."  *Id.* at ¶ 14.

¶ 20    Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." CRE 401. Even if relevant, however, "evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." CRE 403.

¶ 21    We review a district court's evidentiary rulings, including rulings under the rape shield statute, for an abuse of discretion. *See People v. Buckner*, 2022 COA 14, ¶ 63. A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues the law. *See id.*

### C.    The Court Didn't Err by Excluding the Evidence

¶ 22    We conclude that the district court acted within its discretion by excluding the evidence of the prior investigation of possible sexual assault by A.S.'s biological father.

¶ 23    Starting with Sparkman's argument that the proffered evidence "explained the source or origin" of A.S.'s hymenal injuries, we agree that Sparkman failed to show that A.S.'s father committed sexual abuse, let alone digital penetration. At most, the prior

investigation showed that A.S.'s biological father may have touched A.S. either outside or inside her vagina, but how and where were not established. Because Sparkman did not make a sufficient offer of proof of any prior abuse (or penetration), we can hardly say that the proffered evidence was relevant to establish that it was more or less probable that Sparkman caused the hymenal injuries. *See People v. Prentiss*, 172 P.3d 917, 924 (Colo. App. 2006) (concluding that the defendant "did not make a sufficient offer of proof that the victim's hymenal injury was caused by any prior sexual activity").[4] And even assuming otherwise, the risk of unfair prejudice, issue confusion, or misleading the jury from such evidence about speculative events in 2013 outweighed any minimal relevance. *See* CRE 403; *Fletcher v. People*, 179 P.3d 969, 974 (Colo. 2007) ("[E]vidence which is too remote either in time or logical relation to a

---

[4] Though not addressed by the parties, the district court erred by evaluating the alternate source evidence under the rape shield statute. *See Pierson v. People*, 2012 CO 47, ¶¶ 10-14; *People v. Prentiss*, 172 P.3d 917, 921-26 (Colo. App. 2006). Even so, because Sparkman failed to make a sufficient offer of proof that A.S.'s hymenal injury was caused by her biological father, we conclude the court did not err by excluding the irrelevant evidence. *See Prentiss*, 172 P.3d at 926.

matter in dispute should not be admitted."). Thus, the court did not err by excluding the proffered evidence.

¶ 24 We next reject Sparkman's various arguments that the evidence was admissible because it was "relevant and material to [his] defense." *See* § 18-3-407(2)(e). First, we don't see — and Sparkman doesn't explain — how A.S.'s purported knowledge of the prior investigative process (which ended without charges) had any bearing on her "motive to lie" or "falsely accuse" Sparkman. After all, Sparkman defended on the theory that A.S. fabricated the allegations because he was physically abusive, she didn't like him, and she wanted to get rid of him. Defense counsel fully explored these topics on cross-examination. The prior investigation and forensic interview added nothing to this motive.

¶ 25 Second, for similar reasons, we see no link between purported "evidence that A.S. was not believed" during the prior investigation and her "motive to falsely accuse Sparkman." To the extent that A.S. wasn't believed during the prior investigation, Sparkman doesn't explain how that would make A.S. more motivated to accuse

11

Sparkman.[5]  If anything, it offers some explanation as to why she may have delayed her outcry.

¶ 26    Finally, we reject Sparkman's generic argument that the proffered evidence was relevant to sexual knowledge and sexual acts.  Sparkman doesn't develop this argument or explain how the allegation in the prior investigation (that her biological father touched her inside or outside her vagina) gave A.S. any knowledge about vaginal and oral sex.  *See Pierson*, ¶¶ 18-20 (discussing ways in which a defendant might make a sufficient offer of proof concerning the "sexual sophistication" of a child victim).  And without some argument about how an allegation of touching translates to knowledge of oral and vaginal sex, we decline to further address this conclusory assertion.  *See People v. Liggett*, 2021 COA 51, ¶ 53, *aff'd*, 2023 CO 22.

¶ 27    For all these reasons, we conclude that the court didn't abuse its discretion by excluding the evidence of the investigation into the alleged abuse by A.S.'s biological father.  And because the evidence

---

[5] Sparkman points us to nothing in the record to suggest that A.S. "was not believed" during the prior investigation.  The record shows only that her statements were not consistent, and that the prosecution didn't bring charges.

was not relevant or admissible, we also conclude that its exclusion did not violate Sparkman's constitutional right to present a defense. *See People v. Sims*, 2019 COA 66, ¶ 52.

## III. Evidence of Marijuana Use

¶ 28 During direct examination of T.R., defense counsel established that T.R. was the "favorite" parent and that she would let her kids do "fun things." Pursuing that topic, defense counsel then asked, "For example, you would let [A.S.] smoke marijuana, right?" The district court sustained the prosecution's objection, finding the evidence "extremely prejudicial."

¶ 29 Sparkman maintains that this was reversible error because the evidence that T.R. allowed A.S. to use marijuana was relevant to "demonstrate bias and motive for falsely accusing" him.

¶ 30 As before, we review evidentiary rulings for an abuse of discretion. *People v. Miller*, 2024 COA 66, ¶ 40.

¶ 31 Even assuming the evidence that T.R. allowed A.S. to use marijuana had some minimal probative value — and that is generous — we cannot say that the district court abused its discretion by finding that the evidence was unduly prejudicial under Rule 403. After all, defense counsel had already thoroughly

established that A.S. didn't like Sparkman and that he was physically abusive. Thus, admission of evidence that T.R. allowed thirteen-year-old A.S. to use marijuana simply risked diverting the jury's attention to a collateral issue — whether T.R. engaged in criminal conduct — and inviting a decision on an improper basis, such as anger or contempt directed at T.R. *See, e.g., People v. Clark*, 2015 COA 44, ¶¶ 18, 47 (explaining that a district court has discretion to exclude evidence that has little bearing on credibility, places undue emphasis on collateral matters, has the potential to confuse the jury, or has an undue tendency to suggest a decision on an improper basis); *see also Yusem v. People*, 210 P.3d 458, 468-69 (Colo. 2009) (excluding evidence where the collateral issues had the potential to confuse the jury and lead it astray).

¶ 32    We therefore conclude that the district court didn't abuse its discretion by excluding evidence that T.R. allowed A.S. to use marijuana.

## IV.    Expert Testimony

¶ 33    Sparkman next argues that the district court "reversibly erred by allowing inadmissible expert testimony." He says that the expert

improperly testified beyond her expertise and improperly bolstered A.S.'s credibility. We aren't persuaded.

## A. Additional Background

¶ 34 At trial, the prosecution qualified a generalized expert to testify about "all aspects of child sexual assault," including "the process of memory." Though Sparkman generally objected on the grounds of improper bolstering, he did not challenge the expert's qualifications or object to the scope of her expertise.

¶ 35 The expert then testified generally about child abuse outcry and disclosure patterns, delayed reporting, and memory. On redirect examination, in response to the prosecutor's question regarding how multiple similar events affect the memory, the expert added:

> [W]e could assume that if something is difficult or traumatic or stressful that those events . . . would all stand out. And they don't. They, the human you know mind has to be efficient because there's just so much material that happens, right? Across any given day. When something is repeated if it's a positive thing or a difficult or even a stressful or traumatic thing, the mind will script those together if they're highly similar in terms of those kinds of salient details.

B. Legal Principles and Standard of Review

¶ 36 Expert witness testimony is governed by CRE 702 and is admissible when (1) the scientific principles at issue are reasonably reliable; (2) the expert is qualified to offer the testimony; (3) the testimony is helpful to the jury; and (4) the testimony's probative value is not substantially outweighed by the danger of unfair prejudice, confusion, or misleading the jury. *People v. Cooper*, 2021 CO 69, ¶ 47; *see* CRE, 403.

¶ 37 We review a district court's admission of expert testimony for an abuse of discretion and will reverse only if the court's decision was manifestly erroneous. *Cooper*, ¶ 44.

C. Scope of Expertise

¶ 38 Though Sparkman contends that the generalized expert testified beyond her expertise when she opined about "the functioning of a person's brain during a traumatic or stressful event, including the recording of memories," the court specifically qualified the expert in "the process of memory." We therefore construe Sparkman's contention as an unpreserved objection to the expert's qualifications.

¶ 39 An expert witness is not required to hold a "specific degree, training certificate, [or] accreditation" to testify on a particular issue. *Golob v. People,* 180 P.3d 1006, 1012 (Colo. 2008) (citation omitted). Rather, a witness may be qualified to offer expert testimony based on one, or more, of the five factors in Rule 702 — knowledge, skill, experience, training, or education. *See id.*

¶ 40 Before the court qualified the expert, she described her educational background, training, and significant experience working with child sex assault victims. The expert also testified about her training and education in child development. And she testified that she had taught a course at Mesa University "once a semester for about nine years" focused on "cognitive development, memory, those types of developmental changes [from] birth through actually adulthood."

¶ 41 Sparkman's complaint seems to be that the expert — a trained therapist — lacked a medical degree. But the lack of a specific degree doesn't make an expert unqualified. *See id.* Because experience and training are sufficient to qualify an expert, *see* CRE 702, Sparkman's complaint goes to the weight of the expert's testimony, not its admissibility, *see People v. Lehmkuhl,* 117 P.3d

98, 104 (Colo. App. 2004) (observing that when an expert lacks certain additional qualifications within a field of expertise, such deficiency goes to the weight of the testimony).

¶ 42     We therefore conclude that the court did not err by qualifying the expert to testify about memory processing.

### D.     Bolstering

¶ 43     We next reject Sparkman's contention that the generalized expert's "neurological explanations for inconsistent statements . . . improperly bolstered" A.S.'s credibility.

¶ 44     A generalized expert witness may not bolster the credibility of a victim by implying that they are telling the truth.  *See Cooper*, ¶ 95.  But that didn't happen here.  Indeed, the expert's general testimony about the effects of stress and trauma on memory processing said nothing about whether A.S. was telling the truth. Because the expert testimony did not improperly bolster A.S.'s credibility, we conclude the court properly admitted it.

### V.     Cumulative Error

¶ 45     Sparkman contends that even if none of the alleged errors individually require reversal, the "cumulative effect of these errors requires reversal of [his] convictions."  Because we don't agree that

the district court committed multiple errors, we necessarily reject Sparkman's cumulative error contention. *See People v. Allgier*, 2018 COA 122, ¶ 70 ("[T]he doctrine of cumulative error requires that numerous errors be committed, not merely alleged.").

## VI. Constitutionality of the Colorado Sex Offender Lifetime Supervision Act (SOLSA)

¶ 46    Finally, Sparkman challenges his indeterminate sentence imposed under SOLSA. He argues that SOLSA is facially unconstitutional for multiple reasons.

¶ 47    Because Sparkman didn't raise any constitutional challenges before the district court, we review for plain error. *See Hagos v. People*, 2012 CO 63, ¶ 22. And given the many decisions that have rejected similar constitutional challenges to SOLSA, *see, e.g.*, *People v. Sabell*, 2018 COA 85, ¶ 47 (collecting cases), the district court didn't plainly err by not sua sponte finding SOLSA unconstitutional, *see People v. Pollard*, 2013 COA 31M, ¶ 39 ("To qualify as 'plain' error, an error must be so clear-cut, so obvious, that a trial judge should be able to avoid it without benefit of objection.").

## VII. Disposition

¶ 48    We affirm the judgment of conviction and sentence.

JUDGE HARRIS and JUDGE MOULTRIE concur.