## No. 27681

### The People of the State of Colorado v. Richard Thomas McKenna

(585 P.2d 275)

Decided October 10, 1978.                    Rehearing denied October 30, 1978.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Mary J. Mullarkey, First Assistant, for plaintiff-appellee.

Dally & Dehncke, Richard L. Dally, for defendant-appellant.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The appellant was convicted by a jury of first-degree sexual assault.[1] He appeals, raising four principal issues. We affirm.

A detailed factual discussion of this sexual attack would serve no useful purpose. Only those facts necessary to our decision will be discussed.

## I. *Constitutionality of Section 18-3-407, C.R.S. 1973 (1977 Supp.)*

The appellant first questions the constitutionality of Colorado's "rape shield" statute, section 18-3-407, C.R.S. 1973 (1977 Supp.).[2] That

---

[1] Section 18-3-407, C.R.S. 1973 (1977 Supp.).

[2] "*Victim's prior history-evidentiary hearing.* (1) Evidence of specific instances of the victim's prior or subsequent sexual conduct, opinion evidence of the victim's sexual conduct, and reputation evidence of the victim's sexual conduct shall be presumed to be irrelevant except:

"(a)   Evidence of the victim's prior or subsequent sexual conduct with the actor;

"(b)   Evidence of specific instances of sexual activity showing the source or origin of semen, pregnancy, disease, or any similar evidence of sexual intercourse offered for the purpose of showing that the act or acts charged were or were not committed by the defendant.

"(2)   In any criminal prosecution under sections 18-3-402 to 18-3-405, or for attempt or conspiracy to commit any crime under sections 18-3-402 to 18-3-405, if evidence, which is not excepted under subsection (1) of this section, of specific instances of the victim's prior or subsequent sexual conduct, or opinion evidence of the victim's sexual conduct, or reputation evidence of the victim's sexual conduct, or evidence that the victim has a history of false reporting of sexual assaults is to be offered at trial, the following procedure shall be followed:

"(a)   A written motion shall be made at least thirty days prior to trial, unless later for good cause shown, to the court and to the opposing parties stating that the moving party has an offer of proof of the relevancy and materiality of evidence of specific instances of the victim's prior or subsequent sexual conduct, or opinion evidence of the victim's sexual conduct, or reputation evidence of the victim's sexual conduct, or evidence that the victim has a history of false reporting of sexual assaults which is proposed to be presented.

"(b)   The written motion shall be accompanied by an affidavit in which the offer of proof shall be stated.

"(c)   If the court finds that the offer of proof is sufficient, the court shall notify the other party of such and set a hearing to be held in camera prior to trial. In such hearing, the court shall allow the questioning of the victim regarding the offer of proof made by the moving party and shall otherwise allow a full presentation of the offer of proof including, but not limited to, the presentation of witnesses.

"(d)   An in camera hearing may be held during trial if evidence first becomes available at the time of the trial or for good cause shown.

"(e)   At the conclusion of the hearing, if the court finds that the evidence proposed to be offered regarding the sexual conduct of the victim is relevant to a material issue to the case, the court shall order that evidence may be introduced and prescribe the nature of the evidence or questions to be permitted. The moving party may then offer evidence pursuant to the order of the court."

statute provides that, except in certain instances not pertinent here, in rape and sexual assault cases, evidence of the victim's prior or subsequent sexual conduct is presumed to be irrelevant. The statute further prescribes a pretrial screening procedure, much like the *in camera* hearing conducted on a motion in limine, to review proposed evidence on such matters for relevancy before it can be presented publicly at the trial. Appellant contends that the statute amounts to a legislative attempt to create rules of procedure for the courts and therefore violates the separation of powers doctrine by invading this court's constitutional rulemaking power. He further contends that the statute violates due process and denies him the right fully to confront and cross-examine the complainant. We do not agree with any of these contentions.

### A. *Separation of Powers and Court's Rulemaking Power*

The concept of separation of powers is well-established in Colorado. The Colorado Constitution, in Article III, generally provides that the executive, legislative, and judicial departments each shall exercise only its own powers. In addition, *Colo. Const.,* Art. VI, sec. 21, expressly recognizes this court's rulemaking power:

"The supreme court shall make and promulgate rules governing the administration of all courts and shall make and promulgate rules governing *practice and procedure in civil and criminal cases,* except that the general assembly shall have the power to provide simplified procedures in county courts for claims not exceeding five hundred dollars and for the trial of misdemeanors." (Emphasis added.)

Before adoption, in 1962, of the above-quoted constitutional provision, this court's rulemaking authority was acknowledged as an inherent power essential for the administration of the court system. *See, e.g., Kolkman v. People,* 89 Colo. 8, 32-33, 300 P. 575, 584 (1931); *Walton v. Walton,* 86 Colo. 1, 278 P. 780 (1929); *cf. Smith v. Miller,* 153 Colo. 35, 384 P.2d 738 (1963). In this case, the question is whether section 18-3-407, *supra,* represents a legislative usurpation of powers belonging exclusively to the supreme court. We hold that it does not.

Even in states such as Colorado, in which the constitution expressly grants to the supreme court the power to promulgate rules governing court procedure, the question remains whether a particular rule or statute is "procedural" or "substantive." *See, e.g., People v. Smith,* 182 Colo. 228, 512 P.2d 269 (1973). Although numerous tests have been proposed to assist in making such a determination, none has been uniformly accepted. *See Peterson, Rule Making in Colorado: An Unheralded Crisis in Procedural Reform,* 38 *U. Colo. L. Rev.* 137 (1965) (hereinafter referred to as *Peterson*). *See also Joiner & Miller, Rules of Practice and Procedure: A Study of Judicial Rule Making,* 55 *Mich. L. Rev.* 623 (1957) (hereinafter referred to as *Joiner & Miller*); *Levin and Amsterdam, Legislative Control Over Judicial Rule-Making: A Problem in Constitutional Revision,* 107 *U. Pa. L. Rev.* 1 (1958).

One basic and widely-recognized test for distinguishing procedural from substantive matters has been stated as follows:

"If the purpose of [a rule's] . . . promulgation is to permit a court to function and function efficiently, the rule-making power is inherent unless its impact is such as to conflict with other validly enacted legislative or constitutional policy involving matters other than the orderly dispatch of business." *Joiner & Miller, supra,* at 629-630.

Even under such a test, however, the characterization of any particular rule or statute can be subject to substantial disagreement, and the characterization may vary depending on the application of the rule or statute to the facts of a particular case. *Peterson, supra* at 162-63. *See People v. Smith, supra.*

The statute here at issue cannot be characterized as either purely substantive and thus entirely within the legislature's power, or purely procedural and thus subject solely to this court's rulemaking power. Rather it is "mixed" in nature. Obviously, to a certain extent it regulates the judicial function of designating the method for determining the relevance, and thus the admissibility, of evidence. In so doing it changes established rules governing admissibility of the kind of evidence with which it deals.

Prior to the enactment of this statute, defense counsel in a rape case was accorded wide latitutde in cross-examining the prosecutrix. Since her credibility was placed in issue when she testified, her prior sexual conduct was considered admissible to undermine her credibility. *See Struna v. People,* 121 Colo. 348, 353, 215 P.2d 905 (1950) (dictum); 3A *J. Wigmore, Evidence* § 929a (Chadbourn rev. ed. 1970). Moreover, where consent was a defense, as it frequently was, it was thought that the fact that she had consented to sexual relations with others on other occasions might justify a factfinder in concluding that she probably had consented to the sexual act giving rise to the prosecution. 1 *J. Wigmore, Evidence* §62 (3d Ed. 1940). Little or no analysis was applied to attempting to discern whether her sexual habits actually had any logical connection with her credibility or whether her prior consent to intercourse with another at a different time had any logical bearing on whether she had consented to sexual relations with the particular man on trial at the time charged.

As critical thought and analysis have been brought to bear on these issues, it has become apparant that in many instances a rape victim's past sexual conduct may have no bearing at all on either her credibility or the issue of consent. In fact in many cases, cross-examination probing her sexual history has served only to put her on trial instead of the defendant.

The basic purpose of section 18-3-407, therefore, is one of *public policy:* to provide rape and sexual assault victims greater protection from humiliating and embarrassing public "fishing expeditions" into their past sexaul conduct, without a preliminary showing that evidence

thus elicited will be relevant to some issue in the pending case. The statute represents one means chosen by the general assembly to overcome the reluctance of victims of sex crimes to report them for prosecution. Thus it reflects a major public policy decision by the general assembly regarding sexual assault cases. In effect the legislature has declared the state's policy to be that victims of sexual assaults should not be subjected to psychological or emotional abuse in court as the price of their cooperation in prosecuting sex offenders.

This statute represents the Colorado General Assembly's response to a national trend which began in 1974 to reform procedures governing state prosecutions of various sexual assaults.[3] These reforms constitute legislative recognition of the changing perception of rape as, not primarily a sex offense, and certainly not a crime of passion, but rather a hostile crime of violence and domination "calculated to humiliate, injure and degrade the female."[4] Moreover, these statutes are a response to statistics indicating that, while the incidence of rape is increasing, both the percentage of rapes committed which are prosecuted, and the percentage of prosecutions resulting in convictions, remain very low when contrasted with comparable statistics for other serious crimes.[5]

Seen in the light of the policy it embodies, the statute represents far more than merely a legislative attempt to regulate the day-to-day procedural operation of the courts. Undoubtedly it would have been well within this court's rulemaking power to have adopted by rule the procedure set forth in the statute. But we have not adopted such a rule, nor have we promulgated any rule in conflict with the statute. We must decide whether our duty to uphold the state constitution, and our rulemaking power there granted, compel us to invalidate this statute and thus not only undo its procedural provisions but also frustrate the policy changes it represents.

As Chief Justice Marshall declared:

"No questions can be brought before a judicial tribunal of greater delicacy than those which involve the constitutionality of legislative acts. If they become indispensably necessary to the case, the court must meet and de-

---

[3] *See generally, M. Ireland, Reform Rape Legislation: A New Standard of Sexual Responsibility,* 49 *U. Colo. L. Rev.* 185 (1978).

[4] *N. Gager and C. Schurr, Sexual Assault: Confronting Rape in America* 145 (1976).

[5] *M. Ireland, op. cit., supra,* n. 13 at 186 and n. 4. For discussion of rape statistics and the nonreporting problem in Colorado, *see G. Delsohn* "Police are Baffled by Rape Increase," *Rocky Mountain News,* Sunday, June 18, 1978, p. 5.

A federally financed study completed in March, 1978, found that:

". . . rape is the most under reported crime in the United States with only a fraction of the cases reported to the police. A major reason for this is the victim's fear about the treatment she will receive from the criminal justice system as her case proceeds to trial. Even when crimes are reported, only five (5) percent result in apprehension of a suspect and in less than three (3) percent is there an actual conviction. . . . Most physical injuries are minor, but the psychological effects on the victim may be extremely severe. . . ." National Institute of Law Enforcement and Criminal Justice, U. S. Dept. of Justice, *Forcible Rape,* p. ix (March, 1978).

cide them; but if the case may be determined on other grounds, a just respect for the legislature requires that the obligation of its laws should not be unnecessarily and wantonly assailed."[6]

Although certain aspects of the instant statute necessarily touch upon judicial matters, we recognize that legislative policy and judicial rulemaking powers may overlap to some extent so long as there is no substantial conflict between statute and rule. *Peterson, supra,* at 162. While the three branches of our government are separate, equal and coordinate, they are nevertheless branches of one government, and they cannot operate in mututally exclusive, watertight compartments. If government is to serve the people, each branch must seek to cooperate fully with the other two. Confrontations of constitutional authority are seldom in the long-term public interest and therefore are to be avoided where possible. Rather, mutual understanding, respect and self-restraint, the lubricants of good government, are to be sought. While our duty may occasionally require us to declare unconstitutional a statute adopted by the general assembly, we hold that power in reserve to be exercised only when the statute at issue cannot be reconciled with the constitution.

■ Therefore, in the absence of any conflicting rule adopted by this court, and in view of the instant statute's mixed policy and procedural nature, we hold that section 18-3-407, C.R.S. 1973 (1977 Supp.), does not unconstitutionally intrude into matters exclusively judicial nor violate *Colo. Const.,* Art. III, or Art. VI, sec. 21.

### B. *Right to Confront Adverse Witnesses*

The appellant also contends that even if section 18-3-407, *supra,* does not violate separation of powers limitations, it denies him his right to confront his accuser. *U.S. Const.,* amend XIV. He argues that questioning the complaining witness regarding her prior sexual history is necessary to his defense of consent, and would reveal evidence relevant and material to his case.

While we agree that evidence of a rape victim's sexual conduct may be relevant and material in certain cases,[7] section 18-3-407 does not deny a defendant the right to confront the victim and reveal the evidence, if in fact it is shown that such evidence is relevant. The statute provides specific means by which a defendant may make a formal offer of proof, and a full *in camera* hearing may be held prior to trial to determine the relevance, if any, of the evidence. If the court finds that the victim's sexual history is relevant and material in the particular case, then the defendant may introduce the evidence at trial. On the other hand, if the court determines *in*

---

[6] *J. Thayer, John Marshall* 105 (1974). Chief Justice Marshall further declared that the one primary duty of a court is never to seek to "enlarge the judicial power beyond its proper bounds, nor [fear] to carry it to the fullest extent duty require[s]." *Id.* at 106.

[7] *E.g., State v. Cosden,* 18 Wash. App. 213, 568 P.2d 802 (1977).

*camera* that the proffered evidence is irrelevant, the prosecutrix is spared the ordeal of public cross-examination regarding that subject.

■ Thus, rather than completely denying the defendant's rights in order to protect the victim's privacy interest, the statute strikes a balance by conditioning admission of evidence of the victim's sexual history on the defendant's preliminary showing that it is relevant. It involves no denial of the defendant's right to confront his accuser for there is no constitutional right to introduce irrelevant and highly inflammatory evidence. *E.g., People v. Blackburn,* 56 Cal. App.3d 685, 128 Cal. Rptr. 864 (1976); *Smith v. Com.,* 566 S.W.2d 181 (Ky. App. 1978). *See also People v. Simbolo,* 188 Colo. 49, 532 P.2d 962. *But cf. Davis v. Alaska,* 415 U. S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (state's policy *prohibiting* use of juvenile's record to impeach him held subordinate to defendant's right to confront accusers).

■ In this case, the appellant failed to make the required offer of proof, but rather sought by motion to have the statute declared unconstitutional. He never indicated, by offer of proof or otherwise, what past sexual conduct by the victim he hoped to prove, or how her sexual history might be relevant to his defense. Therefore, his inability to confront the victim at trial resulted not from the statute itself, but from his own refusal to take advantage of the procedures it established. He has failed to show that he has been prejudiced by inability to introduce any specific evidence or to ask any specific questions.[8]

## II. *Constitutionality of Section 13-90-101, C.R.S. 1973*

■ The appellant next challenges the constitutionality of section 13-90-101, C.R.S. 1973, which provides in pertinent part that "the conviction of any person for any felony may be shown for the purpose of affecting the credibility of such witness." He asserts that the trial court's denial of his motion to prohibit the prosecution's use of his two prior felony convictions[9] effectively denied him the right to testify in his own behalf. Emphasizing the remoteness of the prior convictions, the appellant argues that their use for impeachment purposes would be highly prejudicial, and of questionable relevance. Thus, he contends, the statute placed an unreasonable burden on his right to testify, and consequently denied him due process.[10] *See State v. Santiago,* 53 Hawaii 254, 492 P.2d 657 (1971). We do not agree.

We have previously upheld the constitutionality of section 13-90-101

---

[8] *Duncan v. State,* 565 S.W.2d 1 (Ark. 1978).
[9] The appellant had been twice convicted of first-degree murder, first in 1950 and again in 1955.
[10] At oral argument, counsel for the appellant noted that a separation of powers challenge would be applicable to this statute as well as to section 18-3-407, C.R.S. 1973 (1977 Supp.), *supra,* Part I. Since the issue was not properly raised at trial or in the appeal brief, however, we do not address it here.

and its predecessors in the face of various challenges. As we stated in *People v. Yeager,* 182 Colo. 397, 403, 513 P.2d 1057, 1060 (1973):

"We hold to the view that a previous felony conviction of a witness, whatever its age, may be shown to affect credibility. In the present state of the law the effect on credibility of a 'remote' conviction must be left to the judgment of the jury."

*See also Hubbard v. Wilson,* 401 F. Supp. 495 (D. Colo. 1975); *People v. Casey,* 185 Colo. 58, 521 P.2d 1250 (1974); *Velarde v. People,* 179 Colo. 207, 500 P.2d 125 (1972); *Taylor v. People,* 176 Colo. 316, 490 P.2d 292 (1971); *Lee v. People,* 170 Colo. 268, 460 P.2d 796 (1969).

### III. *Sufficiency of the Evidence*

The appellant was convicted of first-degree sexual assault, in violation of section 18-3-402(1)(a), C.R.S. 1973 (1977 Supp.), which provides:

"(1) Any actor who inflicts sexual penetration on a victim commits a sexual assault in the first degree if:

"(a) The actor causes submission of the victim through the actual application of physical force or physical violence. . . ."

The appellant does not contest the sufficiency of the evidence identifying him as the actor or showing sexual penetration. He contends, however, that there was insufficient evidence of physical force or violence.

After reviewing the entire record, we have concluded that the evidence of physical force was sufficient to support a finding of the appellant's guilt beyond a reasonable doubt. The victim testified that: (1) she told the appellant she wasn't interested in having sexual relations, (2) she struggled with him, (3) he hit her in the stomach, (4) he held her hands forcibly together, (5) he bent her thumb backward until it hurt, and (6) he choked her until she could barely breathe. Further, she testified that when she said, "I'll scream," he replied, "If you do, it will be the last time you do." The physician who examined the victim corroborated her version of the incident. He testified that at the time of the examination, the victim's thumb was tender and she had an abdominal abrasion near the ribs which had been caused by external force.

Although the appellant emphasizes the inconsistencies in the victim's story, the jury obviously believed her testimony and that of the examining physician. Since the evidence is sufficient to support the jury's verdict, we will not disturb it. *E.g., People v. Elliston,* 181 Colo. 118, 508 P.2d 379 (1973).

### IV. *Jury Instructions*

Finally, the appellant argues that the trial court erred in refusing to give his tendered "theory of the case" instruction. The trial court deleted part of the tendered instruction, but it did give a form of it, and several other instructions given dealt with aspects of the appellant's consent theory. Moreover, the deleted portions of the appellant's tendered in-

struction were clearly argumentative, and would have improperly emphasized certain portions of the victim's testimony. Therefore, it was not error to refuse to give the requested instruction. *E.g., Winters v. People,* 174 Colo. 91, 482 P.2d 385 (1971); *Schreiner v. People,* 146 Colo. 19, 360 P.2d 443 (1961).

Accordingly, the trial court's judgment is affirmed.

MR. JUSTICE GROVES concurs in the result.