The PEOPLE of the State of Colorado, Plaintiff–Appellant

v.

Sir Mario OWENS, Defendant–Appellee.

No. 09SA248.

Supreme Court of Colorado, En Banc.

April 12, 2010.

See also, 219 P.3d 379.

Carol Chambers, District Attorney Eighteenth Judicial District, Centennial, Colorado, Daniel W. Edwards, Special Deputy District Attorney, Denver, Colorado, Attorneys for Plaintiff–Appellant.

James A. Castle, Jennifer L. Gedde, LLC, Jennifer L. Gedde, Reppucci Law Firm, P.C.,

Jonathan Reppucci, Keyonyu X. O'Connell, Denver, Colorado, C. Keith Pope, Martinez Law, LLC, Esteban A. Martinez, Boulder, Colorado, Law Office of Ingrid J. DeFranco, Ingrid J. DeFranco, Brighton, Colorado, Walsh & Larrañaga, Mark Larrañaga, Seattle, Washington, Attorneys for Defendant–Appellee.

Justice COATS delivered the Opinion of the Court.

The People immediately appealed a ruling of the district court declaring unconstitutional a portion of the statutory scheme providing for unitary review in death penalty cases. The district court construed section 16–12–208(3), C.R.S. (2009), to impose a two-year time limit on the completion of all proceedings for postconviction review, the certification of the record, and all appellate briefing and to prohibit extensions of any kind beyond that time. Although it upheld what it considered to be the legislatively imposed two-year limit, the district court found the prohibition against any extension beyond that period unconstitutional for conflicting with Crim. P. 32.2 and infringing on the rule-making power of the judiciary.

Because section 16–12–208(3) does not itself impose an absolute two-year time limit on presenting a unitary appeal to the supreme court but rather directs the court to do so, the district court misconstrued the statute as conflicting with the court rule. Because Crim. P. 32.2 implements the legislature's direction by imposing a series of highly specific time limits, which are designed to meet the two-year goal when, but only when, that can be accomplished without violating the defendant's constitutional rights or the legislature's other expressly articulated goals, no absolute two-year time limit exists in either statute or rule. The order of the district court is therefore reversed, and the case is remanded for further proceedings consistent with this opinion.

## I.

The defendant, Sir Mario Owens, was charged with, among other things, two counts of first degree murder after deliberation. The People gave notice of their intent to seek the death penalty, as required by Crim. P. 32.1. A jury returned verdicts finding Owens guilty of both counts of first degree murder, as well as one count of conspiracy to commit first degree murder and three counts of witness intimidation. At the conclusion of the penalty phase of the trial, the jury returned two death verdicts. On December 8, 2008, the district court imposed sentence on the defendant for all of his convictions, including a sentence of death.

Prior to the imposition of sentence, the defendant raised a number of constitutional challenges to the statutory scheme providing for a unitary review in death penalty cases, sections 16–12–201 to –210, C.R.S. (2009). As relevant here, he specifically challenged the constitutionality of section 16–12–208(3), which, in conjunction with subsection (1), directs the supreme court to adopt rules of procedure ensuring that all proceedings for postconviction review, the certification of the record, and all appellate briefing be completed within two years of the imposition of a death sentence. Although the district court initially declined to address the issue, it ordered additional briefing in May 2009, when it became apparent from the unprecedented size of the record, numerous ongoing delays in making the record available to counsel, and substantial delays in getting conflict-free counsel appointed that there would be a real possibility of requests for extension of time beyond the two-year period. After hearing the matter, the district court upheld what it considered to be a legislatively imposed two-year time limit but found what it also considered to be a legislative prohibition against any extension of that period to be arbitrary and capricious; to unconstitutionally diminish the reliability of death sentences; and to conflict with Crim. P. 32.2 and unconstitutionally infringe on the rule-making power of the judiciary.

The People immediately appealed pursuant to sections 16–12–102(1) and 207(3)(c), C.R.S. (2009), on the grounds that the court's ruling adjudged a statute inoperative or unconstitutional.

## II.

In June 1997 the General Assembly enacted part 2 of article 12 of the Code of Crimi-

nal Procedure, entitled "Unitary Review in Death Penalty Cases," providing an expedited system of postconviction review and appeal directly to this court in cases involving death sentences. The General Assembly expressly declared that its policy goals in enacting this unique procedure were: (a) to ensure compliance with the federal Antiterrorism and Effective Death Penalty Act of 1996; (b) to improve the accuracy, completeness, and justice of review proceedings by requiring that postconviction review commence immediately after the imposition of sentence; (c) to allow for the full and fair examination of all legally cognizable postconviction and appellate issues by the trial court and state supreme court; and (d) to eliminate, to the fullest extent possible, unreasonable and unjust delays in the resolution of postconviction issues by combining and reducing the number of proceedings in death penalty cases. *See* § 16–12–201 (entitled "Legislative declaration").

In addition to including a number of specific provisions for such things as the advisement of defendants, the appointment of counsel, the allowable grounds for postconviction review, and the consolidation of direct and postconviction appeals by this court, the statute also directs this court to adopt, by January 1, 1998, rules establishing procedures, including time limits, to implement and govern the unitary appeal process. *See* § 16–12–208 (entitled "Supreme court—rules"). Along with enumerating specific matters to be addressed by the rules, this statutory provision also directs that the rules ensure that any unitary appeal be presented to the supreme court, including the completion of all appellate briefing, within two years of imposition of sentence, without extension of any kind. *See* § 16–12–208(3).[1] In addition, the statute "urges" this court to give death penalty cases a high priority and to render its decision expeditiously. *See* § 16–12–208(5).

Within five months, this court adopted Crim. P. 32.2, entitled "Death Penalty Post-

Trial Procedures," to become effective January 1, 1998. The supreme court rule addresses with specificity the topics enumerated in section 16–12–208(2) and imposes time limits designed to ensure the completion of all postconviction matters and the filing of the unitary notice of appeal in this court within 250 days of sentencing, with appellate briefing to be completed within 360 days thereafter. Although the rule implements the legislature's direction and goals by prescribing time constraints that, barring "extraordinary circumstances that could not have been foreseen and prevented," result in mandatory presentation of the case to this court in substantially less than two years, it also contemplates the granting of extensions of time when necessary to accommodate such extraordinary circumstances, and it therefore imposes no absolute outside time limit on the entire process.

### III.

■ Both state constitution and case law recognize the power of the supreme court to promulgate rules governing the criminal practice and procedure of the jurisdiction. *See* Colo. Const. art. VI, § 21; *People v. McKenna*, 196 Colo. 367, 370, 585 P.2d 275, 276–77 (1978). Nevertheless, we have also long acknowledged that both judicial rules and legislative acts touching on judicial matters can overlap and coexist to some extent, at least where those acts represent more than a legislative attempt to regulate the day-to-day operations of the courts and do not substantially conflict with court rules. *McKenna*, 196 Colo. at 372–73, 585 P.2d at 278–79. As our case law demonstrates, however, the precise point at which a statute with a mixed policy and procedural nature unconstitutionally intrudes into exclusively judicial matters can be elusive.

■ We have therefore emphasized that the separate branches of government cannot operate in mutually exclusive, watertight

---

1. Section 16–12–208(2) provides:
   The supreme court rules adopted pursuant to subsection (1) of this section shall ensure that all proceedings for postconviction review, the certification of the record, and all appellate briefing shall be completed within two years after the date upon which the sentence of death is imposed. There shall be no extensions of time of any kind beyond the two-year period.

compartments but must cooperate with each other. *See id.* at 373, 583 P.2d at 279. Because confrontations of constitutional authority are seldom in the long-term public interest, we have encouraged and lauded their avoidance in favor of mutual understanding, respect, and self-restraint. *Id.* And while our duty may occasionally require us to declare unconstitutional a statute adopted by the General Assembly, we have emphasized the importance of holding that power in reserve, to be exercised only when the statute at issue cannot be reconciled with the constitution. *Id.*

A court's objective in interpreting statutes must be to determine the intent of the legislature, as expressed in the language of the statute itself. *Holcomb v. Jan–Pro Cleaning Sys.*, 172 P.3d 888, 890 (Colo.2007). Although interpretive aids are available to assist in determining which one of various reasonable interpretations of ambiguous statutory language actually embodies the legislative intent, *id.*, there can be little doubt that the language of section 16–12–208, and subsection (3) in particular, reflects a deliberate choice to avoid potential conflict between statute and court rule and to circumvent the very separation of powers analysis engaged in by the district court below. While the General Assembly's intention that the unitary appeal be presented within two years is clear, its choice to entrust the implementation of that intention to this court rather than attempting to do so itself by legislative enactment is equally clear.

The statute's only reference to a two-year time limit appears in a section expressly devoted to the adoption of supreme court rules establishing procedures and time limits for the postconviction review and unitary appeal created by article 12, part 2. *See* § 16–12–208 (entitled "Supreme court—rules"). Rather than suggesting the creation or independent existence of a legislatively imposed two-year time limit, the applicable statutory language merely directs that the "supreme court rules adopted pursuant to [this section] shall ensure that [all pertinent proceedings] be completed within two years." § 16–12–208(3). Finally, the statute's only reference to a bar to extensions of time is expressly

limited to extensions on the two-year cap, which comes into existence, if at all, only upon adoption by supreme court rule.

In an obvious spirit of cooperation, this court quickly exercised its constitutional rulemaking authority to effectuate the General Assembly's directives. The rule creates a rational and workable mechanism to accomplish the General Assembly's expressly articulated policy goals, including its contemplated time constraints, without simultaneously imposing an absolute time limit that would effectively strip the judiciary of its ability to enforce constitutional obligations in the face of extraordinary circumstances that could not have been foreseen and prevented. *Cf. People v. Germany*, 674 P.2d 345, 353–54 (Colo. 1983) (holding that a statute of limitations for collateral attacks on convictions violated due process where it made "no attempt to distinguish between those constitutional challenges which could and should have been asserted in a timely manner and those which, due to special circumstances or causes, could not have been raised within the applicable period of limitation"). And even this variance further effectuates the General Assembly's intent to expedite the review of death penalty cases: because a death sentence necessarily implicates federal constitutional rights, any failure of the state judiciary to prevent or rectify constitutional deficiencies, quite apart from amounting to a dereliction in itself, would simply leave the matter for subsequent federal correction, resulting in even greater delays.

In any event, when properly interpreted, section 16–12–208 merely directs the supreme court to adopt rules of practice and entrusts to this court the responsibility of ensuring the expedited presentation of the case for review. Whatever else it may mean, the failure of this court to include in its rules an inflexible two-year time limit on any aspect of the unitary review process means that no such practice limit exists. The district court therefore misconstrued section 16–12–208(3) as statutorily imposing an absolute two-year time limit and erred in finding a direct conflict in this regard between statute and rule.

## IV.

Although the district court rightly concluded that it is not precluded from granting extensions of time necessitated by extraordinary circumstances that could not have been foreseen and prevented, as permitted by Crim. P. 32.2(6), its ruling finding section 16–12–208(3) to be unconstitutional in part is reversed, and the case is remanded for further proceedings consistent with this opinion.