23CA0571 Peo v Klingensmith 10-30-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA0571
El Paso County District Court No. 20CR1269
Honorable Eric Bentley, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Eric J. Klingensmith,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE MEIRINK
Fox and Brown, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced October 30, 2025

---

Philip J. Weiser, Attorney General, Katherine Gillespie, Senior Assistant
Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Katherine Brien, Deputy State
Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Defendant, Eric J. Klingensmith, was convicted of aggravated

sexual assault on a child, sexual assault on a child - position of

trust - pattern of abuse, aggravated incest, and attempt to commit

sexual assault on a child.  Klingensmith appeals, contending that

the trial court violated his right to a speedy trial and should have

permitted him to cross-examine K.S.'s credibility on the basis that

she had previously falsely reported a sexual assault.  We affirm.

## I.     Background

¶ 2     K.S. reported that her father, Klingensmith, began sexually

assaulting her when she was seven years old.  The assaults

continued for several years.  K.S. described that Klingensmith gave

her Ambien to forget the encounters.

¶ 3     K.S. reported that Klingensmith also sexually assaulted a

friend of hers, L.C.  L.C. was interviewed and disclosed that when

she was nine or ten years old, she slept over at K.S.'s house.

During the sleepover, she was sent to the basement to sleep

because she and K.S. were being too loud.  Klingensmith came

downstairs while L.C. was sleeping and removed her blanket.  L.C.

stated that after the blanket was removed, she felt something

touching her upper thigh and she saw it was Klingensmith's

1

genitals. L.C. stated that Klingensmith told her and K.S. that if they said anything to the authorities, he would kill them.

¶ 4 Klingensmith was charged with sexual assault on a child by one in a position of trust, two counts of sexual assault on a child, sexual assault on a child - position of trust - victim less than fifteen and as part of a pattern of abuse, and aggravated incest.

¶ 5 On the day Klingensmith's trial was set to begin, the trial court declared a mistrial under Crim. P. 24(c)(4) because the COVID-19 pandemic prevented the court from safely empaneling a jury. The trial was continued several more times.

¶ 6 The court severed the charges relating to K.S. from those relating to L.C. The charges relating to K.S. were tried to a jury in November 2022. The jury found Klingensmith guilty of sexual assault on a child, sexual assault on a child - position of trust - victim less than fifteen and as part of a pattern of abuse, and aggravated incest.

¶ 7 The parties subsequently reached a plea agreement regarding the counts relating to L.C. In November 2022, Klingensmith pleaded guilty to an added count of attempted sexual assault on a

2

child in exchange for dismissal of the remaining counts involving L.C.

¶ 8    The trial court sentenced Klingensmith to the custody of the Department of Corrections for an indeterminate term of fourteen years to life for sexual assault on a child and sexual assault on a child - position of trust - pattern of abuse; an indeterminate term of twelve years to life for aggravated incest; and a determinate term of three years for attempted sexual assault on a child.  The court ordered the sentences to run concurrently.

## II.    Discussion

¶ 9    Klingensmith contends that the trial court erred (1) by declaring a mistrial and refusing to dismiss the case on speedy trial grounds because Crim. P. 24(c)(4) violates the separation of powers doctrine and (2) by prohibiting defense counsel from cross-examining K.S. concerning her prior allegations of sexual abuse against her mother under section 18-3-407, C.R.S. 2022.  We disagree with both contentions.

### A. Crim. P. 24(c)(4) Does Not Violate the Separation of Powers Doctrine

¶ 10    Klingensmith argues that the trial court lacked authority to declare a mistrial under Crim. P. 24(c)(4) because that rule violates the separation of powers doctrine. Crim. P. 24(c)(4) provides, "At any time before trial, upon motion by a party or on its own motion, the court may declare a mistrial in a case on the ground that a fair jury pool cannot be safely assembled . . . due to a public health crisis or limitations brought about by such crisis." Klingensmith argues that a defendant's statutory right to a speedy trial is a substantive right and that Crim. P. 24(c)(4) unconstitutionally allows trial courts to extend the speedy trial timeline. We disagree.

#### 1. Standard of Review and Applicable Law

¶ 11    "Whether a rule adopted by the supreme court is constitutional is a question of law that we review de novo." *People v. Eason*, 2022 COA 54, ¶ 16; *see People v. Pennington*, 2021 COA 9, ¶ 25 (we review a separation of powers challenge de novo).

¶ 12    The Colorado Constitution vests the legislative, executive, and judicial branches of government with distinct powers. Colo. Const. art. III. The separation of powers doctrine limits each branch to the

exercise of only its powers. *People v. Wiedemer*, 852 P.2d 424, 436 (Colo. 1993). While the state's legislative power is vested in the General Assembly, the state's judicial power is vested in the courts. Colo. Const. art. V, § 1; Colo. Const. art. VI, § 1. This judicial power includes the Colorado Supreme Court's authority to "promulgate rules governing practice and procedure in civil and criminal cases." Colo. Const. art. VI, § 21. However, "legislative policy and judicial rulemaking powers may overlap to some extent so long as there is no substantial conflict between statute and rule." *People v. McKenna*, 585 P.2d 275, 279 (Colo. 1978). "No such conflict exists in the absence of a procedure conflicting with that set forth in the statute." *People v. Bondurant*, 2012 COA 50, ¶ 24. If a substantial conflict exists, the statute prevails when it governs traditional areas of legislative concern. § 13-2-108, C.R.S. 2025.

### 2. Analysis

¶ 13 Klingensmith argues that section 18-1-405, C.R.S. 2025, which requires a defendant to be tried within six months from entering a not-guilty plea, conflicts with and must prevail over Crim. P. 24(c)(4) because the right to a speedy trial is substantive and statutory. Klingensmith claims that Crim. P. 24(c)(4)

5

impermissibly broadens the meaning of a "mistrial," but he fails to point to any conflict between the statute and the rule that would require us to conclude that the statute prevails over the rule.

¶ 14　Section 18-1-405(6) sets forth the exceptions to the six-month speedy trial requirement. The mistrial exception doesn't define or limit what constitutes a mistrial; it merely provides that "[t]he period of delay caused by any mistrial . . . [is] not to exceed three months for each mistrial." § 18-1-405(6)(e). Crim. P. 24(c)(4), on the other hand, specifically provides that a trial court may declare a mistrial if a fair jury pool cannot be safely assembled due to a public health crisis. This is consistent with the principle that courts also traditionally determine what constitutes a mistrial. *See, e.g., People v. Chastain*, 733 P.2d 1206, 1213 (Colo. 1987) ("In the absence of a constitutional violation, it is well-established that the decision to grant or deny a motion for a mistrial is directed to the sound discretion of the trial court.").

¶ 15　Further, another division of our court addressed the issue Klingensmith raises and held that Crim. P. 24(c)(4) was a procedural rule that did not run afoul of the separation of powers doctrine. *Eason,* ¶ 21. The division concluded that Crim. P.

24(c)(4) was designed to regulate procedural matters, including docket management, jury pool assembly, and trial practice. *Id.* at ¶ 23. And, to the extent that there was some aspect of public policy underlying Crim. P. 24(c), it didn't conflict with any legislative or executive expression of public policy. *Id.* at ¶ 21.

¶ 16    Although we are not obligated to follow another division, we are persuaded by *Eason*'s rationale and see no reason to depart from the division's holding. We therefore disagree with Klingensmith's contention that Crim. P. 24(c)(4) is unconstitutional. Consequently, the court did not violate Klingensmith's speedy trial rights or err by denying his motion to dismiss.

### B.    The Rape Shield Statute

¶ 17    Klingensmith argues that (1) *People v. Weiss*, 133 P.3d 1180 (Colo. 2006), which held that a victim must have made multiple false accusations of sexual assault before the rape shield statute may be pierced, was wrongfully decided; (2) we are not bound by *Weiss* because the 2024 amendments to section 18-3-407(2) apply to his case; and (3) the trial court erred by prohibiting defense counsel from cross-examining K.S. about her prior false allegation

of sexual abuse against her mother. We disagree with every contention.

1. Additional Applicable Facts

¶ 18 Based on two pages of a 2014 report written by the Department of Human Services (DHS), Klingensmith filed a pretrial motion to pierce the rape shield statute as it applied to K.S. As part of a prior dependency and neglect case involving her mother, K.S. alleged her mother sexually abused her, but DHS determined the allegation was unfounded. Klingensmith sought to admit K.S.'s prior accusation as evidence of her untruthfulness under CRE 608(b).

¶ 19 At a July 2021 hearing, defense counsel acknowledged that K.S. made only one false report but claimed that the evidence should still be admitted despite the supreme court's holding in *Weiss*, which defense counsel argued was incorrectly decided. The trial court denied the motion, stating, "The case law is what it is, so, obviously, I am going to follow the case law."

¶ 20 The case proceeded to trial in November 2022. K.S. testified that she had been attending therapy and meeting with her school counselor during middle and high school to deal with anxiety and

8

mental health concerns.  On recross-examination, K.S. attributed her need for therapy to "flashbacks to the sexual stuff, or even just my panic attacks and with my dad.  I would talk to the counselor or the middle school . . . therapist and try to find ways to help . . . lessen the effect of those and help mitigate it on my own."

¶ 21    Defense counsel immediately filed a motion asking the court to reconsider its prior ruling under section 18-3-407, C.R.S. 2022, arguing that K.S. attributed her need to see a therapist to the acts that Klingensmith allegedly committed but that she was already in therapy because of the alleged sexual abuse her mother inflicted. The defense argued that because it was prohibited from confronting K.S. about the falsehood, the court was allowing K.S. to mislead the jury, which violated Klingensmith's Sixth Amendment confrontation rights.  Defense counsel claimed that K.S.'s testimony "opened the door" and that she should be subject to cross-examination to challenge her credibility.

¶ 22    The trial court held a hearing on the motion and ultimately denied it for the following reasons:

> [F]irst, the defense has not satisfied the
> elements of the Rape Shield statute that under
> the statute would allow them to put on

evidence that [K.S.] has a history of false reporting of sexual assault. First, there is only an allegation of one false report and under [*People v. Marx*, 2019 COA 138, ¶ 50,[1]] the statute requires at least two false reports.

Second, at this hearing that we're holding now, the . . . case law also establishes that the burden is on the defense to . . . prove the false reports by a preponderance of the evidence. So I find that the defense has not proved by a preponderance of the evidence that [K.S.] made even one prior false report.

¶ 23     The trial court explained:

[T]here was an admission by [K.S.'s] mother that the touching was reported, that she had touched her daughter in the ways that [K.S.] had reported, but she denied it being sexual in nature, whereas [K.S.] alleged it being sexual in nature. So what we have is a difference in characterization of certain touching that was factually admitted. So to the extent it's relevant, which it may not be because it's . . . only one incident rather than two, I find that based on that evidence, . . . I can't find that the defense has proved by a preponderance that [K.S.] made a false report of sexual abuse.

---

[1] *People v. Marx*, 2019 COA 138, ¶ 50, reiterated the supreme court's holding in *People v. Weiss*, 133 P.3d 1180 (Colo. 2006), that more than one single false report was necessary to evidence a history of false reporting under the exception to the rape shield statute.

### 2.  *Weiss* Requires More than One "Prior False Allegation"

¶ 24    Klingensmith first argues that *Weiss* was improperly decided when it held there must be more than one prior false accusation of sexual abuse or assault to constitute a "history of false reporting." We disagree.

### a.  Standard of Review and Applicable Law

¶ 25    We review a trial court's determination of the admissibility of evidence under the rape shield statute for an abuse of discretion, but we review its interpretation of the rape shield statute de novo. *People v. Buckner*, 2022 COA 14, ¶ 63.  A court abuses its discretion when its ruling is manifestly arbitrary, unreasonable, or unfair, or is based on an erroneous view of the law.  *People v. Osorio-Bahena*, 2013 COA 55, ¶ 21.

¶ 26    Because sexual assault is a hostile crime of violence and domination calculated to humiliate, injure, and degrade, the General Assembly enacted section 18-3-407.  *People in Interest of K.N.*, 977 P.2d 868, 874 (Colo. 1999).  The rape shield statute seeks to protect sexual assault victims from "humiliating and embarrassing public fishing expeditions into their past sexual conduct."  *Weiss*, 133 P.3d at 1185 (quoting *McKenna*, 585 P.2d at

277-78).  The rape shield statute deems the prior or subsequent sexual conduct of any alleged victim to be presumptively irrelevant to the criminal trial.  *Id.*

¶ 27    But the rape shield statute includes several exceptions to the presumption that evidence of a victim's sexual activities is inadmissible.  *People v. Lancaster*, 2015 COA 93, ¶ 36.  One of those exceptions deals with false reporting.  Under the version of that exception in effect at the time of Klingensmith's trial, evidence that the victim had a "history of false reporting of sexual assaults" was admissible if the evidence was relevant and material and the defendant followed the procedure for admitting such evidence.  *Id.* (quoting § 18-3-407(2), C.R.S. 2014).  To use this exception, the defendant must articulate facts that would show that "the alleged victim made multiple prior or subsequent reports of sexual assault" that were false.  *Weiss*, 133 P.3d at 1182.  And "[a] single false report is not a 'history of false reporting of sexual assaults.'"  *Marx,* ¶ 50 (quoting *Weiss*, 133 P.3d at 1187).

b.    Discussion

¶ 28    Klingensmith acknowledges that he alleged only one instance of false reporting but argues *Weiss* was wrongly decided.  We are

bound by the rules expressed by the supreme court, however, and we are not free to depart from its precedent. *People v. Melendez*, 2024 COA 21M, ¶ 19. Accordingly, until the supreme court states otherwise, *Weiss* controls.

¶ 29 Because the trial court was required to follow *Weiss* and *Marx*, it did not abuse its discretion by requiring evidence of more than one prior instance of falsely reported sexual assault. *People v. Crabtree*, 2024 CO 40M, ¶ 45 (recognizing that trial judges are bound to follow appellate court decisions).

### 3. The 2024 Amendments to Section 18-3-407 Do Not Apply

¶ 30 Klingensmith argues that the 2024 amendments to section 18-3-407, which require only one instance of false reporting, apply to his case because his conviction is not final and this appeal is a "proceeding" as used in the "effective date" language of House Bill 24-1072. We disagree.

#### a. Standard of Review and Applicable Law

¶ 31 Statutory interpretation is a question of law that we review de novo. *Finney v. People*, 2014 CO 38, ¶ 12. In interpreting a statute, "our focus is on legislative intent, and we construe the statute as a whole, giving consistent, harmonious, and sensible

effect to all of its parts." *City & County of Denver v. Dennis*, 2018 CO 37, ¶ 12.

¶ 32     Our primary task in construing a statute is to give effect to the General Assembly's intent. *Riley v. People*, 104 P.3d 218, 220 (Colo. 2004). We first look to a statute's plain language. *Bostelman v. People*, 162 P.3d 686, 690 (Colo. 2007). "If the statutory language is clear and unambiguous, we do not engage in further statutory analysis." *Id.* Only if the statutory language is ambiguous may we employ other tools of statutory construction, including statutory or legislative history or the rule of lenity. § 2-4-203, C.R.S. 2025; *People v. Dominguez*, 2021 COA 76, ¶ 14.

¶ 33     Absent express legislative intent to the contrary, we presume a statute only operates prospectively, meaning it solely applies to events occurring after its effective date. § 2-4-202, C.R.S. 2025; *People v. Di Asio*, 2022 COA 140, ¶ 15. To overcome this presumption, a statute must reveal a clear legislative intent that it be applied retroactively. *Di Asio*, ¶ 15.

¶ 34     Until 2024, the legislature included an exception to the rape shield statute when the alleged victim has a "history of false reporting of sexual assaults." § 18-3-407(2), C.R.S. 2023. In 2024,

14

the legislature changed the relevant language in subsection (2) to include an exception to the rape shield statute when the alleged victim has "at least one incident of false reporting of unlawful sexual behavior." Ch. 123, sec. 2, § 18-3-407(2)(a)(I), 2024 Colo. Sess. Laws 409. The 2024 amendment also requires the moving party to articulate facts that would demonstrate that the victim made a "report of unlawful sexual behavior that was demonstrably false or false in fact." § 18-3-407(2)(a)(II), 2024 Colo. Sess. Laws at 409.

### b. Analysis

¶ 35 Klingensmith relies on *People v. Stellabotte*, 2018 CO 66, ¶ 36, to argue that ameliorative amendatory legislation applies to non-final convictions unless the amendment contains language indicating it applies only prospectively. This reliance is misplaced for two reasons.

¶ 36 First, in *Stellabotte*, the supreme court clarified that a defendant is entitled to the benefit of *ameliorative* amendatory legislation that has mitigated the penalties for the crime at issue if the defendant requested such relief before their conviction was final. *People v. Cali*, 2020 CO 20, ¶ 21.

¶ 37     Here, the legislative amendment was not ameliorative because it did not decrease the severity of a previously defined crime or reduce the maximum sentence that could be imposed for the commission of that crime. *See People v. Godinez*, 2018 COA 170M, ¶ 29. Rather, the legislature simply changed the language in subsection (2) from "a history of false reporting" to requiring that there be "at least one incident of false reporting." 2024 Colo. Sess. Laws at 409. The amendment addressed an evidentiary requirement; it did not reduce any criminal penalties.

¶ 38     Second, the amendment does not apply retroactively. House Bill 24-1072, which revised section 18-3-407, provided that "[t]his act takes effect July 1, 2024, and applies to proceedings occurring on or after said date." Sec. 3, 2024 Colo. Sess. Laws at 410. The legislature expressly provided that the amendment applies prospectively. Because the 2022 statute was in effect at the time of the events in this case and the trial, the 2022 version applies to Klingensmith's conviction. *See People v. Gallegos*, 2025 CO 41M, ¶ 6 n.2.

### 4. Klingensmith's Offer of Proof Was Insufficient

¶ 39 Klingensmith contends that his offer of proof was legally sufficient because he provided two pages of a DHS report demonstrating that K.S. alleged sexual abuse against her mother but that DHS determined it was unfounded. We are unpersuaded.

¶ 40 The defendant seeking to avail himself of the false-reporting exception to the rape shield statute must file a motion offering proof of the specific instances of the victim's false reports of sexual assaults. § 18-3-407(2)(a), C.R.S. 2022. The motion must be accompanied by an affidavit in which the facts contained in the offer of proof are sufficiently stated. § 18-3-407(2)(b). The purpose of the offer of proof is to inform the court of the legal theory under which the evidence is admissible, advise the trial judge of the "specific nature of the evidence so that the court can review its admissibility," and to create "a record for appellate review." *Marx*, ¶ 46 (quoting *State v. Martinez*, 991 A.2d 1086, 1094 (Conn. 2010)).

¶ 41 An "offer of proof" typically states (1) what the anticipated testimony of the witness would be if the witness were permitted to testify concerning the matter at issue; (2) the purpose and relevance of the testimony sought to be introduced; and (3) all the facts

necessary to establish the testimony's admissibility. *Weiss*, 133 P.3d at 1186–87. The defendant is required, in their offer of proof affidavit, to articulate facts that would show that "the alleged victim made multiple prior or subsequent reports of sexual assault" that were false. *Id.* at 1182.

¶ 42 Klingensmith's pretrial offer of proof was insufficient as a matter of law because it failed to articulate why the evidence was relevant or how it would show by a preponderance of the evidence that K.S.'s prior allegation was false. Klingensmith failed to list witnesses that defense counsel intended to call to establish that the prior allegation of sexual abuse was false, and the defense never mentioned whether it had interviewed anyone at DHS or how the facts would be developed at trial. Although the defense filed an affidavit from its investigator, the affidavit merely indicated that the investigator read the DHS report but provided nothing more. Klingensmith did not explain what DHS's "unfounded" designation meant or how DHS arrived at such a designation.

¶ 43 Simply put, there was nothing alleged in the offer of proof that would have established, by a preponderance of the evidence, at a hearing that K.S.'s prior accusation was false. And, as case law

clarifies, an unfounded designation, standing alone, is insufficient to constitute a finding that an allegation was false. *See, e.g., Lancaster*, ¶ 40 (where the charges were dismissed, such an allegation was insufficient in and of itself to establish that the report was false); *Weiss*, 133 P.3d at 1188-89 (motion requesting evidentiary hearing rested solely on allegations that no charges had been brought as a result of the victim's prior reports of sexual assault and was insufficient to pierce the rape shield); *cf. Marx*, ¶ 55 ("The [a]ffidavit referenced other witnesses besides [the person accused of sexual assault] who were prepared to testify to the falsity of the accuser's accusations and the school's findings that the accuser had made false allegations of sexual assault.").

¶ 44 Klingensmith's offer of proof was legally insufficient, and therefore the trial court did not err by denying his motion to pierce the rape shield or his motion for reconsideration. Legal insufficiency notwithstanding, at the hearing the trial court concluded that defense counsel failed to prove "by a preponderance that [K.S.] made a false report of sexual abuse" based on how mother characterized the touching (as nonsexual) versus how K.S.

19

characterized it (as sexual). Accordingly, the trial court did not err by denying Klingensmith's rape shield motion.

### 5. The Trial Court did Not Err by Denying Klingensmith's Request to Admit Evidence

¶ 45　　Klingensmith argues that K.S.'s testimony in response to a jury question opened the door to evidence regarding her prior false allegation of sexual assault against her mother. Again, we are unpersuaded.

¶ 46　　When a party opens the door to otherwise inadmissible evidence, the opposing party may then inquire into the previously barred matter. *Golob v. People*, 180 P.3d 1006, 1012 (Colo. 2008). A juror asked K.S. if she experienced any mental or physical health concerns in middle school or high school. Defense counsel indicated that it was a "fair question" and did not object. In response, K.S. testified that she didn't recall if she was ever diagnosed with depression or anxiety but that she talked to "therapists throughout middle school . . . [and] regularly visited the school counselor . . . almost on a weekly basis" because she had "pretty bad anxiety attacks throughout high school."

¶ 47 K.S.'s testimony concerning the counseling she received in middle school and high school did not open the door to permit Klingensmith to inquire about her allegation of sexual assault against her mother for two reasons. First, K.S.'s response to the juror's question only mentioned her panic attacks and did not mention her mother or her father. During defense counsel's recross-examination, K.S. testified that she did not disclose the sexual abuse to her therapist but simply used therapy to help manage her anxiety and panic attacks. Although K.S. referenced "[her] dad" in her response, that reference was made directly in answer to defense counsel's question concerning her decision not to disclose prior abuse to her therapists. K.S.'s testimony, which omitted any mention of her mother and referenced her father only in the context of subjects not discussed during therapy, did not establish a sufficient factual basis for defense counsel to inquire about K.S.'s allegedly false prior allegation.

¶ 48 Second, although the trial court concluded that the evidence was inadmissible to prove a history of false reporting, it acknowledged that K.S. had "created a misleading impression that she was in therapy because of what her father had done to her." To

21

remedy any misunderstanding, the court asked the parties to discuss a stipulation or jury instruction that could remedy the issue. After some debate, the court instructed the jury as follows: "You are advised that, in addition to her testimony, one of the reasons [K.S.] was in therapy was due to abuse allegedly committed by her mother." Defense counsel did not object to the instruction.

¶ 49 We find Klingensmith's claim that this instruction failed to correct any error unpersuasive. First, defense counsel, through multiple drafts discussed with the court, provided the language that was later used in the clarifying instruction. Finally, defense counsel agreed to the final version and did not object when the court gave the clarifying instruction to the jury. Collectively, defense counsel's failure to object to the clarifying instruction and active participation in its phrasing undermines Klingensmith's claim that the instruction was inadequately curative. *People v. Dunlap*, 124 P.3d 780, 817 (Colo. App. 2004) ("Failure to object to a clarifying instruction, combined with active participation in the response, waives any right to assert error on appeal unless the response is so 'patently wrong' as to constitute a 'misstatement of the law.'" (quoting *Boothe v. People*, 814 P.2d 372, 378 (Colo. 1991)

(Lohr, J., concurring in part, dissenting in part, and concurring in the judgment))). Thus, the trial court cured any misleading impression the jury may have had as to why K.S. was in therapy by instructing the jury that "in addition to her testimony, one of the reasons [K.S.] was in therapy was due to abuse allegedly committed by her mother." *See People v. Kembel*, 2023 CO 5, ¶ 50 (There is a "presumption of law" that jurors are generally able to "understand and follow a trial court's limiting instructions." (quoting *Qwest Servs. Corp. v. Blood*, 252 P.3d 1071, 1089 (Colo. 2011))).

### III. Disposition

¶ 50    We affirm the judgment of conviction.

JUDGE FOX and JUDGE BROWN concur.