**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Edgar Burton ROBINSON, Defendant–Appellant.**

**No. 90CA1566.**

Colorado Court of Appeals, Div. V.

Feb. 27, 1992.

As Modified on Denial of Rehearing March 26, 1992.

Certiorari Granted Aug. 17, 1992.

Cross–Petition for Certiorari Denied Aug. 17, 1992.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., Clement P. Engle, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Patrick J. Mulligan, Deputy State Public Defender, Denver, for defendant-appellant.

Opinion by Judge DAVIDSON.

Defendant, Edgar Burton Robinson, appeals from the order of the trial court dismissing his Crim. P. 35(c) motion as untimely. We affirm.

In 1977, defendant entered a plea of guilty to first degree sexual assault. He received a two-year deferred sentence. In 1990, defendant filed a Crim. P. 35(c) motion to vacate the conviction.

In its opposition brief, the prosecution argued that the motion was untimely pursuant to § 16–5–402, C.R.S. (1986 Repl.Vol. 8A). That statute provides that a person may not "collaterally attack the validity" of a conviction unless the attack is begun within various time spans ranging from six months for petty offenses to no limit for class 1 felonies. The period applicable to first degree assault is three years.

The trial court agreed that the motion was untimely, and it was dismissed without a hearing. On appeal, defendant contends that the dismissal was in error because § 16–5–402 does not apply to attacks on convictions filed pursuant to Crim. P. 35. We disagree.

I.

As a threshold matter, we address the People's argument that defendant's appeal should be dismissed because he may have litigated the merits of this Crim. P. 35(c) claim in another proceeding and has failed to allege specifically that his claims are not duplicative. Although an appeal duplicating an appeal previously denied may be dismissed, *People v. Holmes*, 819 P.2d 541 (Colo.App.1991), there is no requirement that a defendant affirmatively assert that the relief sought has not been previously denied, and we find no indication in this record that any such duplicative relief has been considered or denied on appeal.

II.

Whether motions filed under Crim. P. 35 are included in the provisions of § 16–5–402 is a matter of first impression in Colorado. Our supreme court specifically declined to reach this issue in *People v. Germany*, 674 P.2d 345 (Colo.1983), because it held that the then current version of the statute was unconstitutional. However, in *Moland v. People*, 757 P.2d 137 (Colo.1988), the court specifically stated in a footnote that a defendant's right to obtain postconviction review pursuant to Crim. P. 35

was subject to the requirements of § 16–5–402. While this statement was *dictum,* we view it as highly instructive.

Additionally, in *People v. Fagerholm,* 768 P.2d 689 (Colo.1989), the supreme court upheld the constitutionality of § 16–5–402 in the context of a Crim. P. 35 motion. In *People v. Brack,* 796 P.2d 49 (Colo.App. 1990), this court also upheld the denial of a Crim. P. 35 motion based upon § 16–5–402, although, in those cases, the applicability of § 16–5–402 to such proceedings was not challenged.

### A.

In interpreting particular statutory provisions, this court must seek to discern the intent of the General Assembly, looking first to the language of the statute itself, and giving effect to the statutory terms in accordance with their commonly accepted meaning. *Thiret v. Kautzky,* 792 P.2d 801 (Colo.1990). The intent of the General Assembly in creating time limitations on collateral attacks, as stated in § 16–5–402(2), C.R.S. (1986 Repl.Vol. 8A), is to avoid litigation of stale claims and to avoid frustration of the statutory provisions directed at repeat, prior, and habitual offenders.

Defendant argues that "collateral attack" refers only to an attack on the use of the conviction, such as a motion to suppress an habitual offender count, but not to a "direct" attack on a conviction pursuant to Crim. P. 35. On the other hand, the People argue that, in the criminal context, there is no distinction between collateral attacks and other post-conviction relief and they urge this court to construe the term "collaterally attack" as used in § 16–5–402 to include attacks under Crim. P. 35. Although we find significant distinction between collateral attacks and other types of post-conviction relief, we nevertheless hold that "collaterally attack" as used in § 16–5–402 necessarily includes relief sought pursuant to Crim. P. 35.

A successful Crim. P. 35 attack results in the conviction at issue being vacated. Thereafter, the validity of that conviction may not be relitigated in any subsequent proceeding, though in some circumstances the prosecution may refile the original charge, and defendant could face reconviction. *See People v. Keenan,* 185 Colo. 317, 524 P.2d 604 (1974).

In contrast, an attack on the use of the conviction is an attempt to avoid, defeat, or evade judgment or to deny its force and effect in some incidental proceeding. *Brennan v. Grover,* 158 Colo. 66, 404 P.2d 544 (1965), *cert. denied,* 383 U.S. 926, 86 S.Ct. 929, 15 L.Ed.2d 845 (1966). A successful attack on use bars only the use of the prior conviction in that incidental proceeding; the conviction itself remains. *Watkins v. People,* 655 P.2d 834 (Colo. 1982). The successful attack on use does not prevent relitigation of the issue of the validity of the subject conviction in a subsequent proceeding, or even in a Crim. P. 35 attack of the same conviction. *Wright v. People,* 690 P.2d 1257 (Colo.1984).

However, although avenues for collateral attacks do differ, an attack on the conviction itself has long been considered a collateral attack, whether through Crim. P. 35 or its federal counterpart, 28 U.S.C. § 2255 (1988). *See Bales v. People,* 713 P.2d 1280 (Colo.1986) ("a defendant may collaterally attack a prior conviction by either filing a Crim. P. 35(c) motion in the sentencing court or by filing a proper motion to prohibit the prosecution from using evidence of a prior conviction in a pending criminal prosecution"); *U.S. v. Hayman,* 342 U.S. 205, 72 S.Ct. 263, 96 L.Ed. 232 (1952); *U.S. v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *U.S. v. Addonizio,* 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979). *See also People v. Fagerholm, supra,* (Vollack, J., dissenting) ("[defendant] collaterally attacked both prior convictions under Crim. P. 35"). Also, writs of habeas corpus, of which Crim. P. 35 is a modern equivalent, were traditionally considered collateral proceedings. *See U.S. v. Hayman, supra.*

The General Assembly is presumed cognizant of judicial precedent in a particular area when it enacts legislation in that

area. *Rauschenberger v. Radetsky,* 745 P.2d 640 (Colo.1987). We therefore may assume that it was fully aware of the accepted uses of the term "collaterally attack" as used in the lexicon of criminal law.

■ Moreover, a common sense reading of the plain language of the statute dictates the conclusion that the General Assembly intended not a technical definition of "collateral," but its commonly accepted meaning within a criminal law context. "Statutes must be construed so as to effectuate their intent and beneficial purposes, not to defeat them." *Colorado State Board of Medical Examiners v. Saddoris,* 825 P.2d 39 (Colo.1992). The purpose of the statute is explicit—to prevent defendants from thwarting the effect of repeat offender statutes and to end rampant relitigation of stale claims. The scope of the statute is sweeping ("no person shall collaterally attack the validity of a [prior conviction] unless...."), and reading the statute as defendant urges would limit it drastically. To the contrary, we must construe a statute to effectuate the legislative intent, *Martinez v. Continental Enterprises,* 730 P.2d 308 (Colo.1986), and the intent here is unmistakable. *Cf. People v. Fagerholm, supra; Moland v. People, supra.*

### B.

■ Defendant argues, however, that even if § 16–5–402 applies to Crim. P. 35 motions, Crim. P. 35(c)(3) provides that one who is aggrieved and claims a right to be released or to have a judgment set aside may file a motion for such relief *at any time,* and, citing *People v. McKenna,* 196 Colo. 367, 585 P.2d 275 (1978), he contends that such procedural rule takes precedence over a procedural statute. We disagree.

■ If a legislative act is based in public policy rather than as an attempt to regulate the day-to-day procedural operation of the court, it does not usurp the supreme court's rule making authority. *People v. McKenna, supra.*

Here, the statute's stated goals include preventing difficulties in litigating stale claims and also preventing frustration of statutes aimed at repeat, prior, and habitual offenders. Section 16–5–402 had such a severe impact upon the ability of prior offenders to attack a conviction that an inclusion of a grace period after its effective date was necessary to render it constitutional. *People v. Fagerholm, supra.* Thus, while it also had an incidental effect upon procedure, the statute is primarily an expression of public policy. *See* ABA, *Standards for Criminal Justice,* Standard 22–2.4 (2d ed. 1982). *See also Chase Securities Corp. v. Donaldson,* 325 U.S. 304, 65 S.Ct. 1137, 89 L.Ed. 1628 (1945) (statutes of limitation "represent a public policy about the privilege to litigate"). Accordingly, here, the statute controls over the rule. *See People v. Hollis,* 670 P.2d 441 (Colo. App.1983).

### C.

■ A statute must be construed so as to avoid constitutional infirmities. *People v. Washburn,* 197 Colo. 419, 593 P.2d 962 (1979). Defendant argues that the application of Crim. P. 35 motions to § 16–5–402 will render the statute unconstitutional because the statute will conflict with Colo. Const. art. II, § 21, which prohibits any suspension of the writ of habeas corpus.

First, we note that although our supreme court did not specifically address the state suspension clause, the court upheld the constitutionality of § 16–5–402 in the context of a Crim. P. 35 motion in *People v. Fagerholm, supra.*

■ Secondly, we do not necessarily agree that the collateral attacks foreclosed by § 16–5–402 are those guaranteed by the state suspension clause. The only claims cognizable in a constitutionally guaranteed state habeas corpus proceeding are these: (1) the sentence was beyond jurisdictional limits, or (2) the conviction was invalid because the court lacked jurisdiction over the subject matter or the defendant. *See Stilley v. Tinsley,* 153 Colo. 66, 385 P.2d 677 (1963). The statute does not limit collateral attacks made on those grounds. *See* §§ 16–5–402(2) (a) and (b), C.R.S. (1986 Repl.Vol. 8B). Instead, the statute limits

only those collateral attacks previously made available by legislative and judicial expansion of the scope of postconviction relief beyond that which is constitutionally mandated.

■ Third, the General Assembly may impose statutory conditions on state applications for habeas corpus. *See People ex rel. Wyse v. District Court,* 180 Colo. 88, 503 P.2d 154 (1972); *Stilley v. Tinsley, supra; see also* § 13–45–101, C.R.S. (1987 Repl.Vol. 6A) and § 18–1–410, C.R.S. (1986 Repl.Vol. 8B). And, similar state statutes of limitations on collateral attacks have been upheld as constitutional. *See Davis v. State,* 443 N.W.2d 707 (Iowa 1989) (state legislature may attach reasonable time limitations to the exercise of state constitutional rights). *See also United States v. Randolph,* 262 F.2d 10 (7th Cir.1958), *cert. denied,* 359 U.S. 1004, 79 S.Ct. 1143, 3 L.Ed.2d 1032 (1959) (upholds Illinois' five-year statute of limitations for post-conviction relief).

Having considered this jurisprudence, we determine that § 16–5–402 must be construed to include Crim. P. 35 motions within its terms. However, insofar as defendant's argument raises a claim of facial unconstitutionality, we do not have jurisdiction to decide that issue. Section 13–4–102(1)(b), C.R.S. (1987 Repl.Vol. 6A).

### III.

■ Defendant also contends that the trial court erred in finding that he was not excused for his failure to attack the conviction within the statutory time period. We disagree.

Citing *Moland v. People, supra,* defendant argues that he had no "present need" to attack the conviction until its use in habitual offender proceedings and that, therefore, his neglect was excusable. However, in *People v. Stephens* (Colo.App. No. 90CA1641, February 27, 1992), we held that notwithstanding any present need requirements as set forth in *Moland v. People,* § 16–5–402, as construed in *People v. Fagerholm, supra,* requires that all collateral attacks otherwise barred by the statu-

tory deadlines be filed by July 1, 1989. *People v. Stephens* is dispositive. Accordingly, defendant here has failed to establish a lack of present need.

### IV.

■ For the same reason, we reject defendant's contention that he has been denied equal protection of the law. Defendant's argument is premised on the assumption that he was barred by a lack of present need from timely filing his postconviction challenge. Specifically, he contends that habitual criminal charges filed against a defendant in June 1989 could be attacked, but not those filed after the July 1 deadline. Since we have determined that defendant was not barred by lack of present need, we also reject his equal protection argument.

To the extent that we have jurisdiction of the issues raised, the order is affirmed.

PLANK and ROTHENBERG, JJ., concur.