Opinions of the Colorado Supreme Court are available to the public and can be accessed through the Judicial Branch's homepage at http://www.courts.state.co.us. Opinions are also posted on the Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
December 4, 2023

**2023 CO 59**

**No. 23SA133, *Antero Treatment v. Veolia Water Technologies*—Statutory Interpretation—Supersedeas—Bonds.**

In this original proceeding, the supreme court addresses whether the $25,000,000 supersedeas bond cap set by section 13-16-125(1), C.R.S. (2023), is unconstitutional. The court concludes that the statute does not unconstitutionally infringe on the court's rulemaking authority as exercised in C.R.C.P. 121, section 1-23(3)(a). Nor does the statutory bond cap violate equal protection principles. Finally, the court concludes that the trial court did not abuse its discretion by refusing to order post-judgment discovery or security beyond the $25,000,000 supersedeas bond. Therefore, the court discharges the rule to show cause.

**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

**2023 CO 59**

**Supreme Court Case No. 23SA133**
*Original Proceeding Pursuant to C.A.R. 21*
District Court, City and County of Denver, Case Nos. 20CV31009 & 20CV31008
Honorable Martin Egelhoff, Judge
Honorable Marie Avery Moses, Judge

**In Re**
**Plaintiff:**

Antero Treatment LLC,

v.

**Defendant:**

Veolia Water Technologies, Inc.

\*\*\*\*\*

**In Re**
**Plaintiff:**

Veolia Water Technologies, Inc.,

v.

**Defendants:**

Antero Treatment LLC; Antero Resources Corporation; Antero Midstream
Partners LP; and Antero Midstream Corporation.

**Rule Discharged**
*en banc*

**Attorneys for Antero Treatment LLC; Antero Resources Corporation; Antero Midstream Partners LP; and Antero Midstream Corporation:**
Lewis Roca Rothberger Christie LLP
Kendra N. Beckwith
Frances Scioscia Staadt
  *Denver, Colorado*

Davis Graham & Stubbs LLP
Michael J. Gallagher
James R. Henderson
Kristin L. Arthur
  *Denver, Colorado*

Vinson & Elkins LLP
James D. Thompson
Phillip B. Dye, Jr.
Stephanie L. Noble
Matthew C. Hoffman
  *Houston, Texas*

**Attorneys for Veolia Water Technologies, Inc.:**
Fox Rothchild LLP
Marsha M. Piccone
Risa B. Brown
  *Denver, Colorado*

Troutman Pepper Hamilton Sanders LLP
Misha Tseytlin
  *Chicago, Illinois*

**Attorneys for the Colorado Attorney General:**
Philip J. Weiser, Attorney General
Michael Kotlarczyk, Senior Assistant Attorney General
Brittany Limes Zehner, Assistant Solicitor General
Megan A. Embrey, Assistant Attorney General
  *Denver, Colorado*

**Attorneys for Amici Curiae Colorado Civil Justice League, Colorado Defense Lawyers Association, American Tort Reform Association, DRI Center for Law and Public Policy, and Chamber of Commerce of the United States of America:**
Evans Fears Schuttert McNulty Mickus
Lee Mickus
 *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Trial Lawyers' Association:**
The Paul Wilkinson Law Firm LLC
Nelson Boyle
 *Denver, Colorado*

**Attorneys for Amicus Curiae Colorado Creditor Bar Association:**
Greenberg Sada & Moody PC
Kimberly L. Martinez
Alan Greenberg
 *Englewood, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court, in which **CHIEF JUSTICE BOATRIGHT**, **JUSTICE MÁRQUEZ, JUSTICE GABRIEL, JUSTICE HART**, **JUSTICE SAMOUR**, and **JUSTICE BERKENKOTTER** joined.

JUSTICE HOOD delivered the Opinion of the Court.

¶1    In this post-trial original proceeding, we consider petitioner Antero Treatment LLC's ("Antero"'s) assertion that the $25,000,000 supersedeas bond cap set by section 13-16-125(1), C.R.S. (2023) ("the Statute") is unconstitutional. We conclude that the Statute does not unconstitutionally infringe on this court's rulemaking authority as exercised in C.R.C.P. 121, section 1-23(3)(a) ("the Rule"). Nor does it violate equal protection principles. We also conclude that the trial court did not abuse its discretion by refusing to order respondent, Veolia Water Technologies, Inc. ("Veolia"), to provide post-judgment discovery or security beyond the $25,000,000 supersedeas bond. We therefore discharge the rule to show cause.

## I.  Facts and Procedural History

¶2    After a fifteen-day trial, the trial court awarded Antero $280,105,869. Those damages resulted from breach-of-contract and fraud claims based on Veolia's failure to complete and commission a wastewater treatment facility for natural gas extraction. Veolia appealed. To stay execution of judgment while it appealed, Veolia filed a $25,000,000 bond with the trial court. Veolia maintained that $25,000,000 was the maximum bond amount permitted in Colorado under the Statute.

4

¶3 Antero disagreed. It asserted that the Rule requires Veolia to post a bond for 125% of its more than quarter-billion-dollar judgment. In support of this argument, Antero contended that the legislature's bond cap is unconstitutional because it clashes with the Rule's 125% directive, which Antero sees as a procedural matter that the judiciary controls. Antero also sought additional security and post-judgment discovery to investigate whether Veolia was moving assets to evade the judgment.

¶4 Veolia responded by defending the Statute's constitutionality, but it also pointed to a guarantee, which its parent company Veolia France had entered years earlier. The guarantee stipulated that Veolia France would "indemnify and pay" Antero for any breach of the contractual obligations at issue here. Veolia also presented an affidavit from the CEO of Veolia France stating, "I hereby reaffirm that this legally binding obligation continues to be in full force and effect." Lastly, to address Antero's concern about Veolia's assets, Veolia noted that the CEO's affidavit reassured Antero that "[n]either Veolia nor Veolia France is presently diverting, dissipating, hiding, or otherwise disposing of assets to avoid paying the judgment." Antero countered that these unsecured pledges were woefully inadequate to protect such a large judgment.

¶5 The trial court deemed the Statute constitutional. First, the court determined that the Statute and Rule didn't conflict; and second, it concluded that

5

the Statute concerned substantive matters within the legislature's purview. The court also denied Antero's request for additional security and discovery.

¶6 Antero filed a C.A.R. 21 petition, and we issued a rule to show cause.[1]

## II. Analysis

¶7 We begin by addressing our exercise of original jurisdiction. We then identify the applicable standard of review and revisit familiar principles of statutory interpretation before turning our attention to the core substantive questions before us: (1) whether the Statute violates the separation of powers, (2)

---

[1] We agreed to review the following issues:

1. Whether section 13-16-125, concerning the procedure for setting bond amounts in civil actions, is an unconstitutional invasion of this Court's exclusive authority to promulgate procedural rules.

2. Whether section 13-16-125 violates the equal protection clause because the statute's creation of two classes of judgment-creditors based on a $25 million cap on supersedeas bonds lacks any legitimate purpose and is arbitrary.

3. Whether the district court may accept as security for a stay of execution an over seven-year-old guarantee and a bald promise from the judgment-debtor's foreign parent corporation that neither it nor the judgment-debtor are diverting or dissipating assets and "will not do so" when the governing Rule of Colorado Civil Procedure does not allow such an arrangement.

4. Whether the district court can prohibit post-judgment discovery when section 13-16-125 expressly contemplates that a judgment-creditor may engage in discovery to monitor the judgment-debtor's finances and demonstrate the need for additional security.

whether the Statute violates equal protection requirements, and (3) whether the trial court otherwise abused its discretion.

## A. Original Jurisdiction under C.A.R. 21

¶8 The decision to exercise original jurisdiction under C.A.R. 21 "is an extraordinary remedy limited in purpose and availability," *People v. Owens*, 2018 CO 55, ¶ 4, 420 P.3d 257, 258, and rests within this court's sole discretion, *People v. Kelley*, 2023 CO 32, ¶ 22, 530 P.3d 407, 412. We exercise original jurisdiction when "an appellate remedy would be inadequate, a party may suffer irreparable harm, or a petition raises an issue of first impression that has significant public importance." *People v. A.S.M.*, 2022 CO 47, ¶ 9, 517 P.3d 675, 677.

¶9 This case presents all three grounds. The supersedeas bond is meant to protect Antero's judgment during the appeal, so any remedy arriving after the appeal could be too late. A direct appeal would be inadequate if Veolia loses the appeal, is unable to pay the judgment, and the bond fails to cover the full judgment amount. *See, e.g.*, *Nickerson v. Network Sols., LLC*, 2014 CO 79, ¶ 8, 339 P.3d 526, 529 (concluding that "no other adequate remedy is available" when the delay of an appeal "'may endanger [the petitioner's] ability to recover on [his] judgment lien'" (second alteration in original) (quoting *Goodman Assocs., LLC v. WP Mountain Props., LLC*, 222 P.3d 310, 314 (Colo. 2010))). Moreover, we have never considered

7

whether the Statute fatally conflicts with the Rule, which is a matter of importance given the increasing frequency of Colorado judgments that exceed $25,000,000.

¶10    For these reasons, we choose to intervene now.

## B. Standard of Review and Principles of Statutory Interpretation

¶11    We interpret statutes de novo. *Justus v. State*, 2014 CO 75, ¶ 17, 336 P.3d 202, 208. "Our primary duty in construing statutes is to give effect to the intent of the General Assembly, looking first to the statute's plain language." *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2004). And in doing so, "we afford the language of . . . statutes their ordinary and common meaning" and "construe statutory . . . provisions as a whole, giving effect to every word and term contained therein, whenever possible." *Bd. of Cnty. Comm'rs v. Vail Assocs., Inc.*, 19 P.3d 1263, 1273 (Colo. 2001).

¶12    Here, we are also asked to declare the Statute unconstitutional. Because "declaring a statute unconstitutional is one of the gravest duties impressed upon the courts," we presume that a statute is constitutional unless the challenging party proves its unconstitutionality beyond a reasonable doubt. *City of Greenwood Vill. v. Petitioners for the Proposed City of Centennial*, 3 P.3d 427, 440 (Colo. 2000) (explaining that "the judiciary respects the roles of the legislature and the executive in the enactment of laws").

¶13    With these principles in mind, we shift to the merits of Antero's petition.

8

## C. Section 13-16-125(1) and the Separation-of-Powers Doctrine

¶14    Antero contends that the Statute is unconstitutional because it conflicts with the Rule on a procedural issue reserved to the courts. *See* Colo. Const. art. VI, § 21 (granting this court the authority to "make and promulgate rules governing practice and procedure in civil and criminal cases"). In other words, Antero claims that the Statute violates the separation of powers among the three branches of our state government. *See* Colo. Const. art. III (declaring that no branch of our tripartite government can "exercise any power properly belonging to either of the other[]" branches). We disagree that such a violation occurred here.

¶15    True, both the Rule and the Statute govern supersedeas bonds. This court promulgated the Rule, and the legislature enacted the Statute. C.R.C.P. 62(d) permits an appellant to stay execution of a civil judgment "by giving a supersedeas bond." The Rule then establishes parameters for that bond: "Unless the court otherwise orders, or any applicable statute directs a higher amount, the amount of a supersedeas bond . . . shall be 125% of the total amount of the judgment entered by the court." C.R.C.P. 121, § 1-23(3)(a). Meanwhile, the Statute provides that the "total amount of the supersedeas bonds that are required collectively of all appellants during the appeal of a civil action may not exceed twenty-five million dollars in the aggregate, regardless of the amount of the judgment that is appealed." § 13-16-125(1). But such overlap is common. And overlap doesn't

9

necessarily mean irreconcilable conflict. *See People v. McKenna*, 585 P.2d 275, 279 (Colo. 1978) ("[W]e recognize that legislative policy and judicial rulemaking powers may overlap to some extent so long as there is no substantial conflict between statute and rule," and although separate, "the three branches of our government . . . cannot operate in mutually exclusive, watertight compartments.").

¶16    Where, as here, a rule and statute govern the same general topic, a two-step inquiry guides our determination of whether the legislature has unconstitutionally infringed on the rulemaking authority of this court. First, we determine whether the rule and statute irreconcilably conflict. *See People v. G.S.*, 2018 CO 31, ¶ 32, 416 P.3d 905, 913. During this first step, "we strive to avoid any unnecessary '[c]onfrontation[s] of constitutional authority,' and instead seek to *reconcile* the language and intent of the legislative enactment with our own well-established rules of procedure." *Borer v. Lewis*, 91 P.3d 375, 380 (Colo. 2004) (alterations in original) (emphasis added) (quoting *McKenna*, 585 P.2d at 279).

¶17    Second, if the rule and statute cannot be reconciled, "the question becomes whether the affected matter is procedural or substantive." *G.S.*, ¶ 32, 416 P.3d at 913 (cleaned up). If the affected matter is procedural, the statute is unconstitutional; but if the matter is substantive, the statute prevails. *Id.* The reason for this distinction is rooted in the Colorado Constitution, which grants this

court the authority to promulgate procedural rules but reserves to the legislature the authority to enact substantive statutes. *People v. Wiedemer*, 852 P.2d 424, 436 (Colo. 1993); Colo. Const. art. VI, § 21.

¶18 We consider these two questions in turn.

### 1. Does Section 13-16-125(1) Irreconcilably Conflict with C.R.C.P. 121, Section 1-23(3)(a)?

¶19 We begin with the plain language of the Rule, which states that the bond amount "*shall* be 125%" of the judgment. C.R.C.P. 121, § 1-23(3)(a) (emphasis added). "'Shall' is mandatory unless there is a clear indication otherwise." *Walton v. People*, 2019 CO 95, ¶ 13, 451 P.3d 1212, 1216. Here, the Rule carves out exceptions to the 125% bond requirement when it says, "[u]nless the court otherwise orders, or any applicable statute directs a higher amount." C.R.C.P. 121, § 1-23(3)(a). The words "*otherwise* orders" empower the trial court to order a bond amount *other* than the 125%. *Id.* (emphasis added). Thus, based on the plain language of the Rule, the 125% bond amount is not mandatory. *See also* C.R.C.P. 121, § 1-23(3)(a) cmt. 2 to 2006 amend. (stating that the Rule "sets the *presumptive* amount of a supersedeas bond" (emphasis added)).

¶20 As a result, the Statute and Rule can be harmonized. Read together, the Statute and Rule dictate that a court should order a bond set at 125% of the judgment, unless the trial court "otherwise orders" a different amount. C.R.C.P. 121, § 1-23(3)(a). So, in cases such as this one where 125% of a judgment

11

exceeds the Statute's cap, a court must "otherwise order[]" the amount to be

$25,000,000 (or less) instead of 125% of the judgment. Because the Rule's plain

language allows a trial court to order bond amounts other than 125% of the

judgment—whether as a matter of discretion or statutory fiat—there is no

irreconcilable conflict. Thus, the Statute doesn't unconstitutionally infringe on this

court's rulemaking authority.[2]

¶21     But even if the Statute and Rule conflicted, we would still conclude that the

Statute is constitutional under the second step of our analysis.

## 2. Is Section 13-16-125(1) Procedural or Substantive?

¶22     Recall that our separation-of-powers jurisprudence dictates that if the

affected matter is substantive, the statute prevails, but if the matter is procedural,

the rule prevails. *G.S.*, ¶ 32, 416 P.3d at 913. To help parse procedural from

substantive, we have held that procedural matters are those that "permit the courts

---

[2] Antero asserts two additional arguments in support of an irreconcilable conflict: first, Antero says C.R.C.P. 62 and 121, § 1-23(3)(a) require bonds for each individual judgment in a case to obtain a stay, but the Statute caps the amount of all judgments "in the aggregate"; and second, Antero argues that by using the present tense "is" to describe an appellant's diversion of assets, section 13-16-125(2) requires that an appellee suffer harm before a court is authorized to enter orders to further protect an appellee's interest in its judgment, yet the Rule includes no such prerequisite. Antero did not raise either of these arguments before the trial court. So, we conclude that Antero waived those arguments, and we need not address them. *See Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 513 (Colo. 1986).

to function and function efficiently." *Id.* (quoting *Wiedemer*, 852 P.2d at 436). Thus, a statute is procedural if it "attempt[s] to regulate the day-to-day procedural operation of the courts." *McKenna*, 585 P.2d at 278. Substantive matters, on the other hand, concern "matters of public policy," *G.S.*, ¶ 32, 416 P.3d at 913 (quoting *Wiedemer*, 852 P.2d at 436), or "matters other than the orderly dispatch of business," *McKenna*, 585 P.2d at 277 (quoting Charles W. Joiner & Oscar J. Miller, *Rules of Practice and Procedure: A Study of Judicial Rule Making*, 55 Mich. L. Rev. 623, 630 (1957)). At its core, we simply ask whether "[t]he basic purpose" of a statute "is one of [p]ublic policy." *Id.* at 278.

¶23 We conclude that setting the amount of a supersedeas bond cap is a substantive matter. The amount implicates two matters of public policy: the appellee's right to protect its interest in the judgment, *Muck v. Arapahoe Cnty. Dist. Ct.*, 814 P.2d 869, 872 (Colo. 1991), and the appellant's practical ability to appeal*, cf. G.S.*, ¶ 34, 416 P.3d at 913 ("[T]he scope of appealable orders . . . is a 'matter[] of public policy' that is an 'appropriate subject[] for legislation.'" (quoting *Wiedemer*, 852 P.2d at 436)).

¶24 The legislature's decision to limit an appellee's insurance for its judgment through a bond cap was a judgment call rooted in public policy, which renders the Statute substantive. What's more, the goal of ensuring that an appellee receives

complete security for its judgment does not concern a court's day-to-day orderly dispatch of business.

¶25 The legislature also designed the bond cap to protect an appellant's practical ability to appeal. Though section 13-16-125 does not contain a legislative declaration, the legislative history is instructive. *See Jenkins v. Panama Canal Ry. Co.*, 208 P.3d 238, 241 (Colo. 2009) ("[O]n occasion we look to a statute's legislative history to determine the General Assembly's intent."). The Statute's primary sponsor laid out its purpose at numerous hearings: it was designed to ensure that defendants with "outrageous verdict[s]" awarded against them "*will be able to pursue an appeal* by posting an amount that hopefully they can cover without the[m] having to seek bankruptcy." Hearing on H.B. 1366 before the H. Fin. Comm., 64th Gen. Assembly, 1st Sess. (Apr. 23, 2003) ("Hearing on H.B. 1366") (emphasis added); *see also* Third reading of H.B. 1366 before the House, 64th Gen. Assembly, 1st Sess. (Apr. 25, 2003) (Rep. White, the bill's primary sponsor, explaining that the bill would "guarantee [defendants] the ability to appeal their case" and "ensure access to the courts"). Thus, because the Statute addresses a matter of public policy, the Statute is substantive.

¶26 To be sure, the Statute does incidentally affect the procedure of obtaining a stay of execution. But we have held that so long as a statute is "primarily an expression of public policy," its "incidental effect upon procedure" doesn't turn it

14

procedural. *Wiedemer*, 852 P.2d at 436 (quoting *People v. Robinson*, 833 P.2d 832, 836 (Colo. App. 1992)). By setting a cap *amount*, the Statute doesn't improperly interfere with this court's rulemaking authority to establish appellate *procedures*. *See BDO Seidman, LLP v. Banco Espirito Santo Int'l., Ltd.*, 998 So. 2d 1, 2 (Fla. Dist. Ct. App. 2008) (concluding that the supersedeas bond cap "concern[ed] substantive rights to property and to appeal and [was] not an impermissible intrusion on the procedural practices of the courts"). B*ut see Grassie v. Roswell Hosp. Corp.*, 185 P.3d 1091, 1093 (N.M. Ct. App. 2008) ("[T]he setting of the amount of a supersedeas bond is a procedural matter.").

¶27 Antero also argues that the bond amount has no impact on substantive appellate rights at all because we have held that a defendant may still appeal without posting a supersedeas bond. *See O'Donnell v. State Farm Mut. Auto. Ins. Co.*, 186 P.3d 46, 53 (Colo. 2008). But whether the bond is a formal prerequisite is beside the point. We ask instead if the "purpose" or "affected matter" of the statute is substantive. Therefore, we cannot ignore the General Assembly's concern: a party may forego appeal if it must post a bond of more than $25,000,000 to stay execution of the judgment against it. And that disincentive exists regardless of whether the bond is a formal precondition to appeal.

¶28 We are similarly unmoved by Antero's argument that the Statute must be procedural since this court promulgated a rule concerning supersedeas bond

15

amounts. After all, this argument proves too much. It would render procedural—and thus unconstitutional—all statutes that overlap with a rule from this court. Thus, our existing two-step inquiry would be reduced to one question: whether the rule and statute relate to the same general topic. We decline the implicit request to truncate our precedent in this way.

¶29 In summary, we hold that the Statute and Rule don't conflict; the Rule leaves room for a trial court to deviate from the 125% bond amount and comply with the Statute's $25,000,000 cap. But even if the Statute and Rule were irreconcilable, the Statute addresses a matter of public policy, and therefore falls within the legislature's authority to enact laws governing substantive issues.[3] In short, the Statute doesn't contravene the separation of powers.

---

[3]Antero also cites non-binding federal diversity cases that declare Federal Rule of Civil Procedure 62—which establishes when and how a federal court may implement supersedeas bonds—procedural. *See, e.g.*, *Bass v. First Pac. Networks, Inc.*, 219 F.3d 1052, 1055 (9th Cir. 2000) ("Rule 62(d) is a purely procedural mechanism."); *Maiden Biosciences, Inc. v. Document Sec. Sys., Inc.*, No. 3:21-CV-0327-D, 2023 WL 348997 at * 2 (N.D. Tex. Jan. 19, 2023) ("[A] supersedeas bond is a matter of procedure rather than substantive law."). But unlike the statute here, Federal Rule of Civil Procedure 62(b) and (d) are silent regarding the amount of the bond. So, those federal cases interpreting a federal rule setting forth the *procedure to be followed* for supersedeas bonds aren't helpful in interpreting a Colorado statute that addresses the *amount* of a supersedeas bond. Further, the legislature's own statements regarding the policy goals for section 13-16-125(1) convince us that the Statute is substantive.

## D. Antero's Equal Protection Challenge

¶30 Antero's next argument is that the Statute runs afoul of equal protection principles because it treats appellees differently depending on the size of their judgments. Antero didn't present this argument to the trial court, and "issues not presented in the trial court are deemed waived and cannot be raised on appeal." *Paine, Webber, Jackson & Curtis, Inc. v. Adams*, 718 P.2d 508, 513 (Colo. 1986). Further, Antero is mistaken to suggest that Rule 21 petitioners are exempt from this requirement. On the contrary, parties must still provide trial courts an opportunity to weigh in on the arguments before seeking this court's invocation of its original jurisdiction under Rule 21. *See, e.g.*, *People v. Hernandez*, 2021 CO 45, ¶ 35, 488 P.3d 1055, 1063 (concluding, in a Rule 21 original proceeding, that respondent "waived []his claim" because he "did not raise th[e] argument below").

¶31 Antero counters that it did challenge the Statute's constitutionality below. But a constitutional argument based on separation of powers doesn't preserve every conceivable constitutional challenge. *See Est. of Stevenson v. Hollywood Bar & Cafe, Inc.*, 832 P.2d 718, 721 n.5 (Colo. 1992) ("Arguments never presented to, considered or ruled upon by a trial court may not be raised for the first time on appeal."). Thus, we conclude that Antero waived its equal protection challenge.

¶32    Even if Antero's equal protection claim were properly before this court, however, it would fall short.  For one, both parties agree that review of the Statute—which is patently economic and draws no distinction among protected classes—would trigger the highly deferential rational basis review.  *See Hernandez*, ¶ 38, 488 P.3d at 1063–64 ("Where no suspect class is identified and no fundamental right is at issue, we apply a rational basis standard of review."). Second, the Statute easily survives rational basis scrutiny because it balances two "legitimate legislative purpose[s]": securing an appellee's judgment on one hand and preserving appellant's practical opportunity to appeal on the other.  *Id.*, 488 P.3d at 1064.  And third, the bond cap "bears [a] rational relationship" to those interests because the General Assembly reasonably determined that bonds up to $25,000,000 are not only able to secure an appellee's right to its judgment but are also less likely to render appeals cost prohibitive.  *Id.*; *see also* Hearing on H.B. 1366 (Rep. White explaining that $25,000,000 "seem[ed] to be an amount that is sufficiently high without being backbreaking"); *Duran v. Indus. Claim Appeals Off.*, 883 P.2d 477, 483 (Colo. 1994) (explaining that "equal protection will tolerate 'a rough accommodation of variant interests,'" and thus "distinctions created by the legislature [that] are not made with 'mathematical nicety'" are constitutional under rational basis review (quoting *Dawson ex rel. McKelvey v. Pub. Emps.' Ret.*

*Ass'n*, 664 P.2d 702, 708 (Colo.1983))).  So, we reject Antero's equal protection argument.

## E. Post-Judgment Security and Discovery

¶33     That leaves Antero's final two arguments.  First, Antero asserts that the trial court should have ordered further security, beyond the $25,000,000 bond.  Second, Antero contends that the court was required to order post-judgment discovery so Antero could see if Veolia was intentionally dissipating or diverting funds to get around paying the judgment.

¶34     As to both issues, deference abounds.  We review a trial court's ruling on the sufficiency of a supersedeas bond for abuse of discretion.  *See O'Donnell*, 186 P.3d at 48 n.2 ("[T]he specific amount of the [supersedeas] bond is at the court's discretion.").  We also review a trial court's management of discovery for abuse of discretion.  *See Fox v. Alfini*, 2018 CO 94, ¶ 17, 432 P.3d 596, 600.  "A court abuses its discretion only if its decision is 'manifestly arbitrary, unreasonable, or unfair.'" *Churchill v. Univ. of Colo. at Boulder*, 2012 CO 54, ¶ 74, 285 P.3d 986, 1008 (quoting *Freedom Colo. Info., Inc. v. El Paso Cnty. Sheriff's Dep't*, 196 P.3d 892, 899 (Colo. 2008)). So, instead of asking "whether we would have reached a different result," we ask "whether the trial court's decision fell within a range of reasonable options."  *Id.* (quoting *E-470 Pub. Highway Auth. v. Revenig*, 140 P.3d 227, 230–31 (Colo. App. 2006)).

¶35 We conclude that the trial court's orders fell within the range of reasonable options before it. First, the trial court did not abuse its discretion by setting the bond amount at $25,000,000. The Rule grants a trial court discretion to deviate from the presumptive bond amount of 125%, but that discretion doesn't extend to setting the bond at an amount above the cap set by the legislature.[4] Second, the trial court's refusal to order additional discovery wasn't arbitrary, unreasonable, or unfair. For this argument, Antero relies on section 13-16-125(2), which states that "a court may enter orders that are necessary to protect the appellee or that require the appellant to post a supersedeas bond in an amount" beyond the $25,000,000 cap. The court, however, may only do so once an appellee "proves by a preponderance of the evidence that [the] appellant . . . is intentionally dissipating or diverting assets outside the ordinary course of its business for the purpose of avoiding payment of the judgment." § 13-16-125(2). Without additional discovery, Antero argues that it's impossible for an appellee to prove that an appellant has the intent to avoid paying the judgment by dissipating or diverting funds. More broadly, Antero posits that the purpose of section 13-16-125(2) is impossible to fulfill absent an order for additional discovery.

---

[4] Antero also relies on subsections (5) and (9) of C.R.C.P. 121, section 1-23 to argue that the trial court shouldn't have considered the contract between Veolia's parent company and Antero. Antero waived this argument by failing to make it below. Therefore, we do not address it.

¶36 Perhaps. But the specific order of operations in section 13-16-125(2) undercuts Antero's argument that discovery orders are mandatory. Before a court has discretion to enter any additional orders, including post-judgment discovery orders, section 13-16-125(2) requires that an appellee first make the required showing by a preponderance of the evidence. No doubt, the burden section 13-16-125(2) places on appellees—proving an appellant's intent to dissipate or divert funds—is tough to meet without further discovery. But the plain language of the Statute suggests that the General Assembly determined that section 13-16-125(2)'s purpose could be fulfilled with that hurdle in place. We may not rewrite the statute. *See Owens v. Carlson*, 2022 CO 33, ¶ 30, 511 P.3d 637, 643 ("[W]e have no authority to rewrite a statute.").

¶37 Moreover, section 13-16-125(2) provides that a court "may" issue additional orders as "necessary to protect the appellee." Here, the trial court decided that no additional discovery order was necessary to protect Antero, and that conclusion was not an abuse of discretion considering the $25,000,000 bond and the additional assurances from Veolia.

## III. Conclusion

¶38 We discharge the rule to show cause and remand for further proceedings consistent with this opinion.

21